Bon Realty Co., Inc. v. Commissioner. Frank Drha v. Commissioner.
Bon Realty Co. v. Commissioner
Docket Nos. 3239-64, 3240-64, 4551-65. .
United States Tax Court
T.C. Memo 1967-131; 1967 Tax Ct. Memo LEXIS 129; 26 T.C.M. (CCH) 588; T.C.M. (RIA) 67131; June 16, 1967
Joseph V. Giuliani, for the petitioners. Paul H. Frankel and John K. Antholis, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined the following deficiencies and additions to tax: Addition to Tax, 1954 I.R.C.
Income Tax
Docket No.
Petitioner
Year
Deficiency § 6651(a) § 6653(a)
3239-64
Bon Realty Co., Inc.
1959
$10,490.58
$2,622.65
3240-64
Frank Drha
1959
5,367.65
4551-65
Bon Realty Co., Inc.
1960
9,811.14
2,452.79
$490.56
*130 Some of the issues have been conceded by the parties. The remaining issues in these consolidated cases are (1) the correct amount of the gain realized by the corporate petitioner from the sale of a building in 1959; (2) whether a corporate distribution of $21,000 by the corporate petitioner to Frank Drha in 1959 was wholly or only partially in satisfaction of three second mortgages held by him, the amount of gain realized by him from such distribution, and whether such gain was taxable as ordinary income or as capital gain; and (3) whether the corporate petitioner is liable for additions to tax in 1959 and 1960 under section 6651(a) of the 1954 I.R.C. and in 1960 under section 6653(a) of the 1954 I.R.C.
Findings of Fact Some of the facts were stipulated and they are so found. Bon Realty Co., Inc. (hereinafter called Bon Realty) was organized in the State of New York in 1927 to own and operate rental property. Its principal office is in Long Island City, Queens County, New York. Bon Realty filed its corporation income tax return for 1959 on March 24, 1961, with the district director of internal revenue, Brooklyn, New York. Frank *131 Drha is a resident of Long Island City, Queens County, New York. He filed his individual income tax return for 1959 with the district director of internal revenue, Manhattan, New York. At all times here relevant all of the stock of Bon Realty has been owned by Frank Drha and his immediate family. Frank is the agent and vice-president of Bon Realty. On December 5, 1927, Bon Realty issued three second mortgages to H & H Model Apartment Co., Inc. as security for an aggregate indebtedness of $91,000. On October 30, 1931, the three second mortgages were transferred by the H & H Model Apartment Co., Inc. to Crestway Realty Corporation. Both of these corporations were then controlled by one David H. Hunt. By 1934, Bon Realty's aggregate indebtedness on the debts related to the three second mortgages had been reduced to $37,500. Bon Realty was then in financial difficulty and David H. Hunt was willing to have Crestway Realty Corporation dispose of its interest in the three second mortgages, together with its claim for $37,500, for a substantially smaller sum. On February 19, 1934, Crestway Realty Corporation transferred the three second mortgages, together with the related claim for $37,500, *132 to Louis Bittner, a cousin of Frank Drha, acting as Frank's nominee in the transaction. On November 12, 1935, the three second mortgages, together with the related claim for $37,500, were transferred by Louis Bittner to Stephanie Bilacic (Frank Drha's wife), and on April 3, 1944, Stephanie transferred the three second mortgages and the related claim for $37,500 to Frank Drha. From 1934 to the beginning of 1959, Bon Realty made no payments in connection with the three second mortgages, and its indebtedness on the principal of the debt remained at $37,500. On June 25, 1959, Bon Realty sold rental property which it had acquired in 1927. The gross sales price paid to Bon Realty, partly in 1959 and the rest in 1960, was $125,000. On its income tax return for 1959 Bon Realty showed a total gain of $55,480.05 from this sale which the corporation elected to report on the installment sales method. Pursuant to such election, Bon Realty reported on its 1959 return a gain of $19,718.68. In computing the total gain from the sale in the amount of $55,480.05, Bon Realty used an adjusted basis of $69,519.95, computed as follows: Cost or other basis and cost of im-
provements subsequent to acquisi-
tion
$136,718.67
Less: depreciation allowed (or allow-
able)
$ 73,500.02
$ 63,218.65
Plus: expenses of sale
6,301.30
Adjusted basis
$ 69,519.95
*133 In 1959, Bon Realty distributed $21,000 to Frank Drha. He did not report this distribution on his 1959 income tax return. Since about 1955 the accounting firm of G. Rosenthal and Company has prepared the corporation income tax return of Bon Realty. A 90-day extension was obtained for filing the corporation's 1959 return since the accounting firm was waiting for details of the sale of the real property by the corporation, and other information. The accounting firm and Frank Drha discussed items appearing in the return. The accounting firm mailed the 1959 corporation income tax return to Bon Realty on March 15, 1961, and on the same date the accounting firm manually delivered the corporation's 1960 tax return to Bon Realty. Bon Realty filed its income tax return for 1959 on March 24, 1961. Bon Realty has not filed a corporation income tax return for 1960. The deficiency determined by respondent in Bon Realty's 1959 income tax was based on four adjustments: (1) the disallowance of a repairs expense deduction; (2) the inclusion in income of certain rental income; (3) respondent's determination that the corporation was not entitled to use the installment method of reporting its gain *134 from the sale of the building and that, consequently, all of the realized gain was includable in the corporation's 1959 income; and (4) the determination of 25 percent addition to tax for failure to file a timely return. Bon Realty has conceded the repairs and rental income adjustments in its 1959 income, and respondent has stipulated that Bon Realty is entitled to use the installment method in reporting its gain from the sale of the building. Respondent also determined that Bon Realty in 1960 (when no return was ever filed) received taxable income of $38,664.05, consisting of installment profit on the sale of real property in the amount of $35,761.37 and interest income of $2,902.68. It has been stipulated that Bon Realty received interest income of $2,902.68 in 1960 and that Bon Realty also received in 1960 the balance of the gross sales price for the building. Respondent also determined an addition to tax of 25 percent under section 6651(a) (failure to file timely return) and 5 percent under section 6653(a) (negligence). Respondent also determined that Frank Drha realized a gain of $16,000 in 1959 as a result of the distribution to him of $21,000 by Bon Realty "in redemption *135 of a second mortgage." Respondent determined that Frank's basis in the "second mortgage" was not in excess of $5,000 and that the realized gain of $16,000 was taxable as ordinary income under section 1232. Opinion The first issue is whether in computing the gain realized from the sale by Bon Realty of the two buildings in 1959 the adjusted basis of the buildings should be increased to reflect the cost of certain improvements purportedly made to the buildings as far back as 1931. On its tax return for 1959 Bon Realty reported a gross sales price of $125,000, an adjusted basis of $69,519.95, and a realized gain of $55,480.05. It now contends that certain major improvements made to the buildings were never picked up on the corporation's books and never taken into account on its Federal income tax returns. [2]
*136 We reject Bon Realty's contention for several reasons. First, the evidence is far from convincing that these improvements were ever made or what the actual costs of such improvements were. Although the petition alleges that the costs will be established by bills, receipts, statements, records and other evidence, the only evidence presented at the trial was Frank's vague and contradictory testimony. At first, Bon Realty contended that all of the purported improvements totaling $23,875 were made to the two buildings sold in 1959, but when, at the trial, a third building suddenly materialized (which was not sold in 1959), Frank Drha admitted that "possibly" a $1,500 item and a $1,700 item on the list of improvements were made to the third building. We also have the testimony of the accountant who prepared the 1959 tax return for the corporation that, although Frank went over the return with him and discussed several items, there was no intimation by Frank that the alleged improvements were ever made. Finally, we have no evidence as to the components of the unadjusted cost basis of $136,718.67 actually used on the tax return in computing the realized gain. Such unadjusted cost basis *137 would normally include any improvements made subsequent to the acquisition of the buildings, and on this record we cannot be sure that any of the alleged improvements, if actually made, are not included in the unadjusted cost basis of $136,718.67. But even if Bon Realty met these factual burdens, a further obstacle remains. Section 1016(a)(2) provides that, in computing adjusted basis, an adjustment must be made for exhaustion, wear and tear, obsolescence and amortization to the extent of the amount allowed as a deduction in prior years "but not less than the amount allowable." In other words, an adjustment to basis must be made for past depreciation whether or not such depreciation was actually claimed by the taxpayer. Fidelity-Philadelphia Trust Co. v. Commissioner, 47 F. 2d 36. Most of the alleged improvements were made from 1931 to 1936, anywhere from 23 to 28 years prior to the sale of the buildings in 1959. None of the alleged improvements was made more recently than 1942, some 17 years prior to the year of sale. It appears that some of the equipment was used. There is nothing in this record to indicate even remotely the useful life of any of this equipment *138 and it is very likely that, under these facts, the total amount of allowable depreciation is equal to the cost of the purported improvements. In that event, of course, the adjusted basis of the buildings would be unaffected. We hold that Bon Realty has failed to meet its burden of showing that the adjusted basis of the buildings sold in 1959 was in excess of $69,519.95. Respondent is sustained on this issue. In 1959 (the year in which Bon Realty received $29,500 as partial payment of the sales price of the buildings) Bon Realty distributed $21,000 to Frank Drha who did not report the distribution on his 1959 income tax return. Frank now contends that the distribution was in repayment of loans he purportedly made to the corporation to make the above improvements in the amount of $23,875. Frank also contends that, in addition, the distribution was in satisfaction of the three second mortgages of Bon Realty held by him. We are satisfied from this record that no part of the distribution was in repayment of loans made as far back as 1931 and 1932 by Frank to the corporation. There is no need again to repeat the infirmities of proof surrounding these alleged improvements in the amount *139 of $23,875. Moreover, if these improvements were in fact made, Frank's testimony vacillates considerably as to the source of the loan to the corporation to pay for such improvements. At one point Frank testified that "[my] mother, my father, a little bit, and I" advanced the money to the corporation for the improvements; later he testified that he could not remember how much he loaned to the corporation; still later he testified that he loaned the entire $23,875 to the corporation. To add to the confusion, it appears from the accountant's 1959 working sheet for the corporation that an "Officers Loans Payable" account showed a balance of only $8,303.07 as of January 1, 1959. There is nothing in the evidence to show what portion of this was owed to Frank. We believe the record shows that the $21,000 distribution to Frank was in satisfaction of the three second mortgages of Bon Realty which were held by Frank. The corporate indebtedness on the debts related to the three mortgages had been reduced to $37,500. The corporation's accountant testified that after discussing with Frank the method of handling the $21,000 distribution to him in 1959 "we had decided that the best way to handle *140 the $21,000 payment was to apply it against the mortgage, the second mortgage." The accountant's 1959 working sheet for the corporation, which is in evidence, reflects this understanding by showing the $21,000 item as a reduction of the outstanding second mortgages. We accept this categorization placed upon the transaction. Next it is necessary to find Frank's correct basis in these three second mortgages, and once again we meet with nothing but confusion. We will not narrate the odyssey of these mortgages. Frank testified that he acquired these second mortgages through a nominee in 1934 for $10,000, and that "[my] mother paid $5,000 and I paid $5,000." Later Frank testified that his mother's $5,000 was really a loan to Frank, who in turn paid the entire $10,000. Consequently, Frank here contends that his basis in the three second mortgages was $10,000 rather than $5,000, as respondent contends. None of the above figures or transactions is supported by anything other than Frank's ambivalent testimony as to what occurred in 1934. With the record in this state, we cannot find that Frank's basis in the three second mortgages was in excess of $5,000. We sustain respondent on this issue. *141 Finally, we reach the question whether the net gain of $16,000 ($21,000 minus $5,000) realized by Frank in 1959 is taxable as long-term capital gain or as ordinary income. Section 1232(a)(1) [3] provides for capital gains treatment of amounts received in retirement of evidences of corporate indebtedness issued before January 1, 1955 only where such evidences of indebtedness are "issued with interest coupons or in registered form, or to those in such form on March 1, 1954." Here the three second mortgages and the related evidences of indebtedness were issued by Bon Realty in 1927 without interest coupons. Nor were the three second mortgages and related claims in registered form within the meaning of section 1232(a)(1). In Victor A. Miller, 32 T.C. 954, reversed on other issues, 285 F. 2d 843 (C.A. 10, 1960), we stated the following: Registration, for practical purposes, means that the obligation runs only to the registered owner. The primary purpose is to safeguard the investor or holder by making unregistered transfers ineffective. To accomplish this, the note or other evidence of indebtedness must show on its face that it is registered. Gerard v. Helvering, 120 F. 2d 235 *142 (C.A. 2, 1941), affirming 40 B.T.A. 64 (1939). Likewise, the phrase "in registered form" implies, at least, that the ownership of the instrument is listed in an appropriate record or register maintained for that purpose by the issuing corporation. There is no evidence that the three second mortgages and related claims met any of these requirements. Contrary to Frank Drha's argument on brief, neither the fact that the *143 mortgages appear as an obligation on the corporate books nor the fact that the mortgages were recorded in the office of the Register of Queens County, brings the mortgages and related claims within the statute. Victor B. Gilbert, 6 T.C. 10 (1946). We hold that the gain of $16,000 realized by Frank Drha in 1959 is taxable to him as ordinary income. Respondent determined that Bon Realty was liable for additions to tax under section 6651(a) in the years 1959 and 1960. Section 6651(a) applies in the event of failure to file a tax return unless it is shown that such failure is due to reasonable cause and not due to willful neglect. Bon Realty filed its 1959 return on March 24, 1961, long after the expiration of the 90-day extension obtained for filing the corporation's 1959 return. Bon Realty has not filed a tax return for 1960. The accountant who prepared the 1959 and 1960 returns for Bon Realty testified that he was unable to prepare and deliver the 1959 return to the corporation until March 1961 [4] because he was waiting for Frank Drha to supply the necessary information concerning the sale of the buildings in 1959. Drha argues vaguely that the death of a stockholder *144 prevented the corporation from filing its 1959 return on time. It appears that Drha's mother, who apparently was a stockholder in Bon Realty, died early in 1960 but there is not a shred of evidence to tell us why her death made the information necessary for the 1959 return unavailable. Morevover, we gain a strong impression from the record that the management and supervision of the properties was in Frank's hands with little or no assistance from his family. A taxpayer's unexplained delay in supplying to his accountant the information necessary to prepare a return is not reasonable cause for failure to file a timely return. Bon Realty also argues that the only reason the corporation did not file its 1960 return was that Frank Drha, as an officer of the corporation, "disagreed with how Bon Realty's 1959 return had been prepared and consequently as to how Bon Realty's 1960 return should be prepared." We are told in petitioners' brief that Frank believed the improvements were a proper addition to the basis of the buildings sold in 1959 and that *145 "[it] was this belief and this belief alone that caused a return not to be filed." However, this explanation is not supported by the record. The accountant testified that through March 1961 when the corporate returns were finally completed and delivered there was never any discussion with Drha about these items. The accountant testified "that discussion never came up." It was only later, when the tax returns were being reviewed by the respondent, that these so-called improvements materialized. We find, on the basis of this record, that the corporation has failed to show that its failure to file timely returns for 1959 and 1960 was due to reasonable cause and was not due to willful neglect. We sustain respondent on this issue. Respondent also determined that Bon Realty was liable for additions to tax under section 6653(a) for the year 1960. This section provides that "[if] any part of any underpayment * * * is due to negligence or intentional disregard of rules and regulations * * * there shall be added to the tax an amount equal to 5 percent of the underpayment." Petitioner Bon Realty has the burden of proof on this issue. David Courtney, 28 T.C. 658 (1957). *146 We cannot find on this record that Bon Realty has met its burden of showing that the underpayment of its 1960 tax was not due to negligence. Our discussion above on this prior issue involving the additions to tax under section 6651(a) is equally applicable here. There is no merit in Bon Realty's superficial argument that section 6653(a) is limited to cases where the respondent has been furnished with misleading, inaccurate or incomplete information and that since the corporation here did not even file a 1960 return, there is no basis for the application of section 6653(a). See Vahram Chimchirian, 42 B.T.A. 1437, 1442 (1940), affd. per curiam 125 F. 2d 746 (C.A.D.C., 1942). Nor is there any merit in Bon Realty's argument that the addition to tax for negligence under section 6653(a) and the addition to tax for failure to file a timely return under section 6651(a) are mutually exclusive. [5]Robinson's Dairy, Inc., 35 T.C. 601 (1961), affd. 302 F. 2d 42 (C.A. 10, 1962); Vahram Chimchirian, supra.We sustain respondent on this issue. *147 Decisions will be entered under Rule 50. Footnotes
2. The alleged improvements are as follows: ↩
Date
Item
Amount
12/ 4/31
Heating System
$ 2,175
4/ 2/32
Oil Burner & Oil Tank
1,200
9/14/32
Heating System
4,150
9/14/32
Heating System
1,500
12/ 5/32
Heating System
1,700
1932-1936
Replaced all the plumbing
in 3 houses with brass
pipes
9,000
9/18/33
Gas Ranges
$ 1,150
1942
New Chimney 5 stories
high and new Red Flash
Boiler
3,000
TOTAL
$23,875
3. SEC. 1232. BONDS AND OTHER EVIDENCES OF INDEBTEDNESS. (a) General Rule. - For purposes of this subtitle, in the case of bonds, debentures, notes, or certificates or other evidences of indebtedness, which are capital assets in the hands of the taxpayer, and which are issued by any corporation, or government or political subdivision thereof - (1) Retirement. - Amounts received by the holder on retirement of such bonds or other evidences of indebtedness shall be considered as amounts received in exchange therefor (except that in the case of bonds or other evidences of indebtedness issued before January 1, 1955, this paragraph shall apply only to those issued with interest coupons or in registered form, or to those in such form on March 1, 1954).↩
4. Both the 1959 and 1960 corporation tax returns were delivered by the accountants to Bon Realty at about the same time in March 1961.↩
5. Section 6653(d) provides specifically that if a fraud penalty is assessed under section 6653 (b) for an underpayment of tax then no penalty under section 6651 (for failure to file a timely return) shall be assessed for the same underpayment.↩