Robert J. Hackett v. Commissioner.
Hackett v. Commissioner
Docket No. 903-68.
United States Tax Court
T.C. Memo 1970-17; 1970 Tax Ct. Memo LEXIS 341; 29 T.C.M. (CCH) 47; T.C.M. (RIA) 70017; January 27, 1970, Filed. Robert J. Hackett, pro se, 4221 Forest Hills Blvd., Parma, Ohio. James A. McNabb, Jr., for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined the following deficiencies in, and additions to, petitioner's income taxes: Year
Deficiency
Addition to tax underSec. 6651(a) [1]
Adition to taxunder Sec. 6653(a)
dditiontax under Sec. 6653(a)
1962
$2,934.31
$146.72
1963
2,396.74
$599.19
119.84
1964
1,832.98
458.24
91.65
1965
1,566.38
391.60
78.32 The following items are at issue: (1) business income in each of the four years, based upon respondent's reconstruction of income and his disallowance of certain deductions, (2) dividend income in 1962, (3) net racetrack winnings in 1963, (4) the exemption for petitioner's wife in 1962, (5) the additions to the tax in each year, and (6) the amount of charitable contributions in each year. Findings of Fact Some of the facts have been stipulated and are so found. At all times herein material, petitioner *343 has resided in Glen Gardner, New Jersey. He filed a separate income tax return for 1962 with the district director of internal revenue, Newark, New Jersey. He filed no returns at all for 1963, 1964, and 1965. During the years in issue, petitioner carried on a business as a sole proprietor. Primarily he sold bottled gas; as sidelines, he sold and repaired appliances. Some of the appliances he sold, he purchased as junk and then reconditioned. During the years in issue, petitioner purchased his gas cylinders from Garden State Propane Gas Corporation. [2] He purchased 3,134 cylinders in 1962, 3,078 in 1963, 2,823 in 1964, and 2,827 in 1965. In each year he 48 sold as many cylinders as he purchased: his inventory during the years in issue was substantially constant. Petitioner sold the bottled gas at various prices ranging from $6.15 to $9.90. The average price per cylinder sold was $8.25. Petitioner's gross receipts from the sale of gas were $25,855.50 in 1962, $25,393.50 in 1963, $23,289.75 in 1964, and $23,322.75 in 1965. Petitioner *344 carried no inventory of appliances but would order from a supplier only when he received an order from a customer. During the years in issue, petitioner took trade-ins on all the appliances he sold. The sale of new appliances gave rise to gross receipts, in the form of money and the fair market value of traded-in appliances, of $1,373.59 in 1962, $1,219.44 in 1963, $2,708.55 in 1964, and $658.00 in 1965. Petitioner's total cost of gas and new appliances sold was $13,289.90 in 1962, $12,959.83 in 1963, $13,113.50 in 1964, and $11,547.15 in 1965. Petitioner had additional gross income of $3,000 in each year from repair work and from gain upon the sale of used appliances and miscellaneous junk. Petitioner had gross income from his business of $16,939.19 in 1962, $16,653.11 in 1963, $15,884.80 in 1964, and $15,433.60 in 1965. Petitioner paid salaries of $3,145.00 in 1962, $5,866.28 in 1963, $3,390.26 in 1964, and $3,612.00 in 1965. Petitioner's various Ford trucks were used only in connection with his business, and he is entitled to depreciation deductions upon the entire basis of such trucks. He is, in addition, entitled to certain other depreciation deductions not disputed *345 by respondent as set forth in the notice of deficiency and incorporated herein by reference. During the years in issue, petitioner used a telephone answering service in connection with his business. The cost of this service was $500 per year. During 1962 and during the first eight months of 1963, petitioner lived next door to his place of business. During the last four months of 1963 and during 1964 and 1965, petitioner lived at the back of the building which housed his business. The utilities in petitioner's home next door and in his place of business were separately metered. Subsequently, he established living quarters in another location. Petitioner is entitled to business deductions totaling $2,343 for 1962 for telephone, utilities, gasoline, oil, and vehicle maintenance expenses; $2,550 for 1963 (after a downward adjustment of $50 in utilities expense, based on a total of $300 for such expense times one-half personal usage times one-third of the year); $2,450 for 1964 and $2,450 for 1965 (after a downward adjustment for personal usage of $150, equal to one-half times $300). Petitioner is entitled to certain other business deductions as set forth in the notice of deficiency *346 and incorporated herein by reference. In 1962, petitioner received interest income of $791.50; in 1963, $680.67; in 1964, $410.91; and in 1965, $292.86. Petitioner received $190 in rental income in each year herein in issue. During 1963, petitioner frequently bet upon horse races. During the season the track was open, he would go out as often as three times a week. Some of the time he won and some of the time he lost. He won $1,100 at the Liberty Bell Racetrack in 1963. Petitioner paid $1,009.76 in property taxes in 1962, $1,506.66 in 1963, $1,399.31 in 1964, and $843.63 in 1965. Petitioner made charitable contributions of $100 in each year. In the notice of deficiency, respondent determined that petitioner received $2,281.60 of income in 1962 in the form of a dividend from Mexican Eagle Oil Co., Ltd., a foreign corporation hereinafter referred to as Mexican Eagle. This determination was amplified and explained as follows: Taxpayer failed to report dividend income on 3,565 shares of Mexican Eagle Oil Co. in 1962. Mexican Eagle paid a dividend of 64" a share in Mexican currency convertible into United States currency at the Irving Trust Co., New York on May 23, 1962. These *347 dividends do not qualify for the dividends received credit or the dividend exclusion as they are paid by a foreign corporation. Part of petitioner's underpayment of taxes in each of the years in issue was due to negligence. Petitioner's failure to file returns for 1963, 1964, and 1965 was not due to reasonable cause. Opinion In disposing of this case, the Court has a confused and, in many respects, 49 inadequate record despite the fact that it made every effort (including the issuance of a subpoena for records of petitioner in the hands of his wife, from whom he seems to have been divorced and with whom he was having difficulties) to afford petitioner every opportunity to present his case. The presentation of evidence was complicated by the facts that petitioner was most dilatory in taking advantage of the efforts of the Court to assist him and that he insisted on representing himself contrary to the urging of the Court and its clear warning that petitioner, with one exception, hereinafter noted, had the burden of proof. Also, to some extent, the Court was handicapped in that respondent did not pursue certain avenues of information which were easily available. We have done *348 the best we can with the transcript of the testimony, the exhibits, and the stipulation of facts. In so doing, we have exercised our judgment as to the credibility to be given to the testimony of the petitioner, who was his own sole witness. We also note that he appeared more capable of discharging the task of relf-representation than might normally be expected of taxpayers generally. Issue No. 1. Business Income and Deductions. In the notice of deficiency, respondent reconstructed petitioner's taxable income for 1962, 1963, 1964, and 1965. Petitioner has the burden of proving respondent's reconstruction incorrect. Rule 32, Tax Court Rules of Practice. For the most part, the only evidence which petitioner presented was his own testimony. While we have given credence to his testimony in some respects, it was to a large degree vague and incomplete. Moreover, testimonial evidence alone is rarely adequate where the dispute involves business income and deductions. Anthony E. Spitaleri, 32 T.C. 988, 993 (1959). For us wholly to reject respondent's reconstruction, it would be necessary for petitioner either to show that respondent's methods were arbitrary or to provide *349 sufficient evidence so that an alternative reconstruction could be made. Petitioner has done neither. When this case first came on for trial, petitioner sought to excuse himself by claiming that he did not have access to his books and records. However, petitioner was given access to the books and records through the issuance of a subpoena duces tecum by the Court and was accorded ample time to work upon them before the second trial session. He utterly failed to make any productive use of this opportunity. We therefore have had no choice but to accept the general structure of respondent's reconstruction, though not every detail thereof. Cf. Hyman B. Stone, 22 T.C. 893, 905 (1954). Respondent reconstructed petitioner's business income as follows: From the records of petitioner's known suppliers, respondent was able to determine what petitioner had purchased during each year. Respondent assumed that petitioner's inventory of gas cylinders did not change from year to year [3] and that each appliance was sold in the same year that it was purchased. Respondent determined a $9.00 average price for the gas cylinders by taking a rough average of the $8.15 to $9.90 range of prices *350 at which, according to respondent's agent, petitioner had told him the gas cylinders were sold. By using this $9.00 average price for the gas cylinders and a 30 percent markup for the appliances, respondent was able to calculate petitioner's gross receipts. The cost of goods sold was, of course, available from the suppliers' records. Miscellaneous business income for each year respondent set at $3,000, based upon an estimate by petitioner. In this manner, respondent determined petitioner's gross income from business for each year. Under the circumstances of this case, we think respondent's method of reconstructing income reasonable and its use justified. The fact that it can make no pretense of precision does not mean that it is arbitrary. See Schira v. Commissioner, 240 F. 2d 672 (C.A. 6, 1957), affirming a Memorandum Opinion of this Court. Respondent's calculation was based on an average of a price range of $8.15 to $9.90 per cylinder. *351 The testimony at the trial indicates that the range was $6.15 to $9.90, with intermediate prices of $7.15 and $8.15. We were given little probative evidence as to the distribution of sales at the various prices. We therefore have had to estimate the average price on the basis of such evidence as the record affords. Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Considering the record as a whole, we have concluded that the average price was $8.25. 50 In the reconstruction of income, respondent made no allowance for the fact that petitioner had to take trade-ins when he sold appliances and therefore, even though the sale was at the list price, did not receive the full list price in cash. From the point of view of a practical businessman, this objection may be well-founded, but, from the point of view of the tax law, it is not. The amount realized from a sale includes not only the money received, but also the fair market value of any other property received. Section 1001(b). Petitioner would have realized less gain than respondent's method ascribed to him only if the amount allowed on a trade-in exceeded the fair market value of the traded-in property, for example, *352 if the trade-ins were usable only as junk with little or no value. There is no evidence upon which we could base such a conclusion, and, indeed, it appears that the trade-ins were in fact resold, although the resale prices are not revealed. We hold that petitioner has failed to show that respondent's reconstruction was erroneous in this respect. Petitioner also notes that respondent made no allowance for bad debts. But we have no evidence, not even testimonial evidence, that petitioner ever sold anything on credit. And, even if he did, we have no evidence that any defaults occurred. We must therefore hold that petitioner has failed to show he is entitled to bad debt deductions for any of the years in issue. In his notice of deficiency, respondent allocated half of the expenses (including depreciation allowances) of operating petitioner's trucks to personal usage and therefore allowed only half of such expenses as a deduction. We have found that petitioner's use of the trucks was entirely business-related and have in the findings of fact increased the deductions allowable accordingly. Respondent also allocated half of the utilities expenses of petitioner's place of business to personal *353 usage, based upon the agent's observation of petitioner's use of the business as a residence. We have, however, found that the telephone answering service, which accounted for over half of the total utilities expense, was entirely business-related. We have also found, on the basis of petitioner's testimony, that he lived in the house next door to his place of business until he moved out in 1963. We have made appropriate adjustments in the deductions allowable under the rule of Cohan v. Commissioner, supra. Respondent disallowed a deduction of $264 on petitioner's 1962 return for "miss [sic] freight postage advertising"; no evidence relating to this item appears in the record, and respondent's disallowance must therefore stand. For the same reason, respondent's disallowance of $130 in salary expenses for 1962 must be sustained. Respondent allowed certain other business deductions for 1963, 1964, and 1965 which are not in dispute and, hence, need not be discussed herein. Issue No. 2. Mexican Eagle Dividends Respondent determined that petitioner owned 3,565 shares of stock in Mexican Eagle Oil Company, Ltd., and specified in the deficiency notice that petitioner *354 had received a dividend of $0.64 per share on May 23, 1962, or a total dividend of $2,281.60. Petitioner denied ever having received this dividend. Respondent introduced no evidence at the trial tending to show that petitioner received such a dividend and on brief appears to have abandoned any such contention. Instead, respondent now contends that petitioner received other distributions from Mexican Eagle, payable earlier in 1962, in the amount of $2,179.05. Respondent's agent had thought these distributions to be a return of capital and therefore no reference had been made to them in the notice of deficiency. Respondent's answer makes no mention of these earlier distributions, and respondent has not moved to amend his answer, although the Court pointedly referred to this omission at the trial. Under these circumstances, the issue of whether petitioner realized $2,179.05 in February 1962 in the form of a dividend from Mexican Eagle is not properly before use, since it was raised neither in the pleadings nor in the notice of deficiency; in any event, respondent would have the burden of proof that the February 1962 distribution was a taxable dividend to petitioner, which clearly *355 he has not sustained. Cf. Leon Papineau, 28 T.C. 54, 57 (1957); Sheldon Tauber, 24 T.C. 179, 185 (1955). Issue No. 3. Racetrack Winnings Petitioner does not dispute respondent's determination that he won $1,100 at the racetrack in 1963. The only question is 51 whether he is entitled to any offset under section 165(d) [4] due to a net loss on other wagers during the year. Petitioner has not introduced any documentary evidence of any losses during the year. We do not doubt his testimony that he sustained individual wagering losses. But he confessed himself unable to testify with any assurance that he did in fact over the course of the year suffer a net loss, apart from his $1,100 win. Compare Herman Drews, 25 T.C. 1354 (1956). We must therefore hold that he has failed to show that he is entitled to any deduction under section 165(d). Issue No. 4. Exemption for Wife Petitioner claimed a $600 exemption for his wife on his separate return for 1962. When a taxpayer files separately, *356 he cannot take any exemption for his wife if she has any gross income. Section 151 [5]; Alfred L. von Tersch, Jr., 47 T.C. 415, 421 (1967). The record indicates that, at the very least, petitioner's wife may have had some interest income, albeit relatively small. In any event, petitioner has not sustained his burden of proving that she did not have any gross income or that she was not the dependent of another taxpayer. Under the circumstances, we hold for respondent on this issue. Issue No. 5. Additions to Tax Respondent determined additions to the tax for 1963, 1964, and 1965 for failure to file a return, *357 pursuant to section 6651(a). [6] To avoid the addition, the taxpayer must show that his failure to file was due to reasonable cause; it is not enough to show that he did not willfully neglect to file. Peter Vaira, 52 T.C. 986, 1005-1006 (1969); Coshocton Securities Co., 26 T.C. 935, 939 (1956). Petitioner's excuse for not filing was that his wife had taken his records. We find it difficult to see how one theft could be a reason for failure to file in all three years. But, in any case, we hold it is not adequate cause. Petitioner should have at least furnished the Internal Revenue Service with such information as he had available, stated that his records had been taken and that he did not know his precise income, and asked for an extension of time to file a proper return. Respondent also determined additions for negligence in each year, pursuant to section 6653(a). There is no impediment to the imposition of additions to tax both for failure to file returns under section *358 6651(a) and for failure to pay tax under section 6653(a). It has been so held with respect to comparable provisions in the 1939 Code ( Robinson's Dairy, Inc., 35 T.C. 601, 609 (1961), affd. 302 F. 2d 42, 45 (C.A. 10, 1962)), and the 1954 Code effected no changes. See H. Rept. No. 1337, 83d Cong., 2d Sess., pp. A418 and A419 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 590 and 591 (1954). Compare section 6653(d) of the 1954 Code, providing specifically that no addition to tax for failure to file a return may be assessed when the addition to tax for fraud is sustained. The burden of proof rests upon petitioner. Peter Vaira, supra, 52 T.C. at p. 1004. We hold that he has failed to sustain that burden. Issue No. 6. Charitable Contributions, Etc. Our finding as to petitioner's charitable contributions is set forth in the findings of fact, as are certain items no longer in dispute. Decision will be entered under Rule 50. 52 Footnotes
1. All statutory references, unless otherwise specified, are to the Internal Revenue Code of 1954.↩
2. Petitioner may have collected used cylinders from his customers and returned them to his supplier, but the record is not clear on this point.↩
3. Petitioner's 1962 return showed a decrease in inventory. In determining petitioner's gross receipts for 1962, respondent took into account only those cylinders purchased during the year and not the reported decrease in inventory.↩
4. SEC. 165. LOSSES. * * * (d) Wagering Losses. - Losses from wagering transactions shall be allowed only to the extent of the gains from such transactions.↩
5. SEC. 151. ALLOWANCE OF DEDUCTIONS FOR PERSONAL EXEMPTIONS. (a) Allowance of Deductions. - In the case of an individual, the exemptions provided by this section shall be allowed as deductions in computing taxable income. (b) Taxpayer and Spouse. - An exemption of $600 for the taxpayer; and an additional exemption of $600 for the spouse of the taxpayer if a separate return is made by the taxpayer, and if the spouse, for the calendar year in which the taxable year of the taxpayer begins, has no gross income and is not the dependent of another taxpayer.↩
6. Section 6651 has been amended, effective after 1969, to provide certain other additions to the tax. Section 943, Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487 (Dec. 30, 1969).↩