**Fred N. ACKER, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

**No. C80–862.**

United States District Court,
N. D. Ohio, E. D.

June 2, 1981.

James L. Oakar, Cleveland, Ohio, for plaintiff.

James C. Lynch, Asst. U. S. Atty., Cleveland, Ohio, Jonathan B. Forman, Trial Atty., Tax Div., Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On May 23, 1980, plaintiff Fred N. Acker filed a complaint against the United States pursuant to 28 U.S.C. § 1346 [1] seeking a refund of income tax overpayments withheld by his employers for the calendar years 1962, 1963 and 1966. Acker also seeks a refund of fraud penalties, imposed pursuant to I.R.C. § 6653(b), for the calendar years 1958 and 1960, on the ground that his failure to file income tax returns for these years was not due to an intent to evade taxes.[2]

---

1. 28 U.S.C. § 1346(a) provides:

The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort, except that the district courts shall not have jurisdiction of any civil action or claim against the United States founded upon any express or implied contract with the United States or for liquidated or unliquidated damages in cases not sounding in tort which are subject to sections 8(g)(1) and 10(a)(1) of the Contract Disputes Act of 1978. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.

2. I.R.C. § 6653(b) provides:

Fraud.—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined

On February 3, 1981, the United States filed a motion for summary judgment asserting that the refund of overpayments sought by Acker for the years 1962, 1963 and 1966 is barred by the statute of limitations provided in I.R.C. § 6511(a).[3] The United States also asserts that Acker's admitted willful and deliberate refusal to file income tax returns for the years 1958 and 1960, constitutes, an intent to evade taxes as a matter of law.

On March 9, 1981, Acker also filed a motion for summary judgment asserting that any tax overpayments made in a given calendar year became automatic credits in subsequent calendar years, and therefore, his refund claim is not barred by the statute of limitations cited above. Acker's motion also asserts that his refusal to file income tax returns for 1958 and 1960 was not due to fraud but was a means by which he could assert his constitutional objections to the Internal Revenue Code. Consequently, Acker claims that he is entitled to a refund of the fraud penalties he paid for the years 1958 and 1960 as a matter of law.

Acker was a lawyer who attended John Marshall Law School. He practiced law from approximately 1930 through 1950. Sometime thereafter he was disbarred. In his deposition Acker admitted to having a good working knowledge of accounting fundamentals and the federal income tax laws. Notwithstanding this knowledge, he did not file income tax returns for the years 1926 through 1946 and was found liable in civil fraud for evading taxes for the years 1941, 1945 and 1946. *Acker v. Commissioner*, 26 T.C. 107 (1956), *aff'd in pertinent part and rev'd in part*, 258 F.2d 568 (6th Cir. 1958),

*aff'd.*, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959). In 1950 Acker was convicted for willful failure to file an income tax return for the year 1946 and was sentenced to seven months at a federal correctional institution.

Unrelenting in his determination to expose the injustices of the federal revenue laws, Acker made speeches about their confiscatory nature. His beliefs are documented in an article he published entitled "I Refuse" in which he professes categorically to expose the evils of the federal income tax laws.

Acker's histrionics continued to guide the manner by which he handled his income tax affairs. For the taxable years 1958 and 1960, he deliberately refused to file income tax returns. He also refused to file income tax returns for the years 1962 through 1969. In 1968 he was convicted a second time for willfully refusing to file income tax returns for the years 1958 and 1960 and was placed on probation for five years.[4]

In this case there are two time periods in question. The first period encompasses the taxable years 1962 through 1969 during which Acker did not file income tax returns, although income taxes were withheld from his wages by his employers. For the years 1962, 1963 and 1966 the amount of income taxes withheld from his wages exceeded his income tax liability. For the years 1964, 1965 and 1967, however, the amounts withheld were insufficient to meet his income tax liability. In November 1971 Acker finally filed income tax returns for the years 1962 through 1969 and pursuant to a 1975 audit of those returns paid the

---

under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.

3. I.R.C. § 6511(a) provides:
 **Period of limitation on filing claim.**—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of

such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

4. Acker appealed this conviction and it was affirmed. *See: Acker v. Commissioner*, 415 F.2d 328 (6th Cir. 1969), *cert. denied*, 396 U.S. 1003, 90 S.Ct. 553, 24 L.Ed.2d 495 (1970).

deficiencies for the years 1964, 1965 and 1967. In 1975 Acker filed a refund claim for the years 1964, 1965 and 1967 because the amount of deficiencies he paid for those years should have been reduced by the amounts of overpayments made in the years 1962, 1963 and 1966. In 1978 the Internal Revenue Service refused his claim and this suit was commenced.

The second time period at issue involves the years 1958 and 1960. On March 26, 1973, pursuant to agreement, the Internal Revenue Service filed income tax returns on behalf of Acker for the years 1958 and 1960. These returns yielded tax deficiencies and accordingly on March 26, 1973, Acker was assessed for deficiencies, delinquency penalties, and interest. According to the government, "at or about this time, civil fraud penalties, pursuant to section 6653(b) of the Internal Revenue Code ... were proposed with respect to the two years." In March 1973, while the issue of fraud was pending, Acker paid the income tax deficiencies, delinquency penalties, and interest. In October 1973, the government assessed Acker with civil fraud penalties and he paid that amount in June 1974. On June 17, 1975, Acker filed a refund claim for the civil fraud penalties which was subsequently disallowed by the Internal Revenue Service.

For the reasons which follow, the government's motion for summary judgment is granted on the statute of limitations issue and granted in part on the issue of fraud. Acker's motion for summary judgment is denied.

There is no dispute regarding the computation of assessments and payments for the years in question. The issues are: (1) whether Acker is entitled to have the tax overpayments he made in 1962, 1963 and 1966 credited to his tax deficiencies in 1964, 1965 and 1967 in light of I.R.C. § 6511(a); and (2) whether Acker is entitled to a refund of the civil fraud penalties as a matter of law.

Acker claims he is not barred by the statute of limitations from having his 1962, 1963 and 1966 tax overpayments credited to his tax deficiencies in 1964, 1965 and 1967 because whenever an overpayment occurs in a given year, it becomes an automatic credit to the tax liability of the subsequent year. There is no merit to this contention. I.R.C. § 6511(a) provides that if no income tax return has been filed, a *claim for credit* or refund of tax overpayments must be made within two years from the date the tax was paid.[5] *See: Snyder v. United States*, 616 F.2d 1187 at 1188 (10th Cir. 1980); *Republic Petroleum Corp. v. United States*, 613 F.2d 518 (5th Cir. 1980); *Alexander v. United States*, 202 F.Supp. 434 (N.D.Ohio 1962). Income taxes withheld at the source are deemed paid on the fifteenth day of the fourth month following the close of the taxable year. I.R.C. § 6513(b).[6] Since Acker did not file his refund claim until 1975, it was made well beyond the two years from the date he was deemed to have made the tax overpayments. Thus, the claim was properly disallowed. Since Acker may not obtain a credit for the tax overpayments he made in 1962, 1963 and 1966, the

---

5. *See:* Fn. 3, *supra.*

6. I.R.C. § 6513(b) provides:

 **Prepaid income tax.**—For purposes of section 6511 or 6512—

 (1) Any tax actually deducted and withheld at the source during any calendar year under chapter 24 shall, in respect of the recipient of the income, be deemed to have been paid by him on the 15th day of the fourth month following the close of his taxable year with respect to which such tax is allowable as a credit under section 31.

 (2) Any amount paid as estimated income tax for any taxable year shall be deemed to have been paid on the last day prescribed for

filing the return under section 6012 for such taxable year (determined without regard to any extension of time for filing such return).

 (3) Any tax withheld at the source under chapter 3 shall, in respect of the recipient of the income, be deemed to have been paid by such recipient on the last day prescribed for filing the return under section 6012 for the taxable year (determined without regard to any extension of time for filing) with respect to which such tax is allowable as a credit under section 1462. For this purpose, any exemption granted under section 6012 from the requirement of filing a return shall be disregarded.

payment in 1975 for tax deficiencies in 1964, 1965 and 1967, merely satisfied an outstanding tax liability. Acker does not cite, nor is the court aware, of any authority for the proposition that a tax overpayment in a given year acts as an automatic credit to the tax liability of the subsequent year. To the contrary, the government *may* credit tax overpayments to subsequent years unilaterally, but it is certainly *not required to do so.* I.R.C. § 6402(a).[7] Thus, the Internal Revenue Service has discretion to credit tax overpayments to subsequent years when no credit or refund claim has been filed. *See: Kalb v. United States,* 505 F.2d 506 (2nd Cir. 1974), *cert. denied,* 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975); *Hansen-Sturm v. United States,* 201 F.Supp. 392 (S.D.N.Y.1962). If this discretion is not exercised, it is incumbent upon the taxpayer to follow the Internal Revenue Code procedures for recovering tax overpayments illegally or erroneously collected. Since Acker's credit or refund claim was not filed timely, he is not entitled to recover any tax overpayments made in the years 1962, 1963 and 1966.

 Whether Acker is entitled to a refund of the civil fraud penalties depends on whether the facts and circumstances in this case indicate an intent to evade income taxes in the years 1958 and 1960. I.R.C. § 6653(b) provides:

> If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In the case of income taxes and gift taxes, this amount shall be in lieu of any amount determined under subsection (a). In the case of a joint return under section 6013, this subsection shall not apply with respect to the tax of a spouse unless some part of the underpayment is due to the fraud of such spouse.

Case law provides that the government must prove civil tax fraud by clear and convincing evidence and that such proof may be established by circumstantial evidence. *Powell v. Granquist,* 252 F.2d 56 (9th Cir. 1958); *Plunkett v. C.I.R.,* 465 F.2d 299 (7th Cir. 1972); *Irolla v. United States,* 390 F.2d 951 (Ct.Cl.1968); *Biggs v. C.I.R.,* 440 F.2d 1 (6th Cir. 1971); *Stoltzfus v. United States,* 398 F.2d 1002 (3rd Cir. 1968), *cert. denied,* 393 U.S. 1020, 89 S.Ct. 627, 21 L.Ed.2d 565 (1969). Thus, if a taxpayer willfully and knowingly fails to file income tax returns over an extended period of time, and he possesses sophisticated business, financial, and tax acumen, the clear and convincing test is satisfied and a finding of fraud is inescapable.

 It is a fact that Acker was convicted pursuant to I.R.C. § 7203 for willfully and knowingly failing to file income tax returns timely for 1958 and 1960.[8] Thus, he is collaterally estopped from denying the element of willfulness in the government's assertion of fraud. *See Plunkett v. C.I.R., supra.*

 In *Irolla,* the court found pertinent to the issue of fraud that the taxpayer "was a man of extensive business and financial experience . . . that [he] was familiar with the income tax system . . . that [he] knew he had taxable income in each of the years . . . [and] that [he] failed to file any income tax returns over a long period of time . . ." *Irolla v. U. S., supra,* at 954–956. All these facts exist in the present case. Acker was an investor in a number of companies. He was also an executive of Zenith Plastics Company and Triad Metal Products. He was an attorney who was well acquainted with the income tax laws and he knew that he had taxable income for the years in question but nevertheless refused to file income tax returns and pay income taxes.

7. I.R.C. § 6402(a) provides:
 **Authority to make credits or refunds**
 **General rule.—In the case of any overpayment, the Secretary within the applicable period of limitations,** *may* **credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect** of an internal revenue tax on the part of the person who made the overpayment and shall refund any balance to such person. (emphasis added)

8. *See:* Fn. 4.

It is also undisputed that Acker's refusal to file income tax returns and pay taxes had its genesis as long ago as 1929. Indeed, for Acker, refusing to pay taxes became routine. Acker admits all these facts but insists that refusing to file income tax returns and pay taxes only constituted a means of asserting his objections to the federal income tax laws. In *United States v. Acker*, 415 F.2d 328 (1969), *cert. denied*, 396 U.S. 1003, 90 S.Ct. 553, 24 L.Ed.2d 495 (1970), the Sixth Circuit Court of Appeals rejected this argument by holding:

> If appellant had desired to test the constitutionality of the Internal Revenue Code, he could have done so by submitting a return upon which a tax could have been assessed under the plan he alleges is unconstitutional.

415 F.2d at 329. The court also found:

> On this aspect of the case, substantially the same arguments now presented were previously advanced by this taxpayer and rejected by this Court on the merits. See *Acker v. Commissioner of Internal Revenue*, 258 F.2d 568 (6th Cir. 1958), *cert. denied*, 358 U.S. 940, 79 S.Ct. 346, 3 L.Ed.2d 348.

415 F.2d at 329. Accordingly, fraud has been established in the instant case through clear and convincing evidence for the years 1958 and 1960.

■ The final issue is addressed by the court *sua sponte*. The government's brief provides that the Internal Revenue Service assessed Acker for unpaid taxes, interest and *delinquency* penalties for the years 1958 and 1960.[9] While it is clear that the government may assess and collect a fraud penalty in this case pursuant to I.R.C. § 6653(b),[9] it is equally clear that when a fraud penalty is imposed, a delinquency penalty in addition, is forbidden. I.R.C. § 6653(d).[10] I.R.C. §§ 6653(b) and (d) and Treas.Reg. § 301.6653–1(b)[11] provide that the fraud penalty is in lieu of, any negligence penalty available pursuant to I.R.C. § 6653(a),[12] and any delinquency penalty available pursuant to I.R.C. § 6651.[13] *See:*

9. *See* p. 3, Government's Brief in Support of Motion for Summary Judgment.

10. I.R.C. § 6653(d) provides:

(d) **No delinquency penalty if fraud assessed.**—If any penalty is assessed under subsection (b) (relating to fraud) for an underpayment of tax which is required to be shown on a return, no penalty under section 6651 (relating to failure to file such return or pay tax) shall be assessed with respect to the same underpayment.

11. Treas.Reg. § 301.6653–1(b) provides:

(b) **Fraud.** (1) If any part of any underpayment of tax, as defined in section 6653(c) and paragraph (c) of this section, required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment.

(2) If a 50 percent addition to the tax for fraud is assessed under section 6653(b) with respect to an underpayment—

(i) The addition to the tax under section 6651, relating to failure to file a tax return, will not be assessed with respect to the same underpayment, and

(ii) In the case of the income taxes imposed by subtitle A and the gift tax imposed by chapter 12 of subtitle B, the 5 percent addition to the tax under section 6653(a), relating to negligence and intentional disregard of rules and regulations, will not be assessed with respect to the same underpayment.

12. I.R.C. § 6653(a) provides:

If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A, by chapter 12 of subtitle B (relating to income taxes and gift taxes), or by chapter 45 (relating to windfall profit tax) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.

13. I.R.C. § 6651 provides:

**Addition to the tax.**—In case of failure—

(1) to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction

*Estate of William R. Ming, Jr.*, 35 T.C.M. 523 (1976); *Gullott v. Commissioner*, 25 T.C.M. 324 (1966); *Bon Realty Co. Inc. v. Commissioner*, 26 T.C.M. 588 (1967); *Hackett v. Commissioner*, 29 T.C.M. 47 (1970); *48th Street Corp. v. Commissioner*, 39 T.C.M. 904 (1980); *Wood v. Commissioner*, 30 T.C.M. 525 (1971); Rev.Rul., 59–406, 1959–2 Cum.Bull. 426; Rev.Rul. 60–205, 1960–1 Cum.Bull. 641; Mertens, 10 Law of Federal Income Taxation § 55.09 (1976).

 Clearly, the statutes and cases provide that when a penalty is imposed pursuant to I.R.C. § 6653(b), neither a penalty under I.R.C. § 6651(a) nor under I.R.C. § 6653(a) may be imposed. Thus, when a delinquency and/or negligence penalty is imposed, but it is determined later that fraud was involved, the government must either refund the amount of any delinquency and negligence penalties paid, or credit those amounts to the fraud penalty imposed.[14] By refunding or crediting penalties paid pursuant to I.R.C. §§ 6651(a) and/or 6653(a) when the fraud penalty is levied, the mandate of I.R.C. § 6653(d) is satisfied.[15] This procedure also preserves the government's right to assert fraud when the fraud is discoverable only at some time subsequent to the imposition of the delinquency and/or negligence penalty. In this case the fraud penalty imposed is proper to the extent that the government refunds or credits any penalties Acker paid pursuant to I.R.C. §§ 6651(a) and/or § 6653(a) for the years 1958 and 1960. Acker is also entitled to interest on that refund or credit as provided by statute.[16]

thereof during which such failure continues, not exceeding 25 percent in the aggregate;

(2) to pay the amount shown as tax on any return specified in paragraph (1) on or before the date prescribed for payment of such tax (determined with regard to any extension of time for payment), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount shown as tax on such return 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate; or

(3) to pay any amount in respect of any tax required to be shown on a return specified in paragraph (1) which is not so shown (including an assessment made pursuant to section 6213(b)) within 10 days of the date of the notice and demand therefor, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount of tax stated in such notice and demand 0.5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 0.5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. The Tax Reform Act of 1969 amended I.R.C. § 6651 to include a penalty for failure to pay taxes shown on a filed return. The 1969 Act also amended I.R.C. § 6653(d) to include the prohibition of concurrent imposition of a section 6653(b) civil tax fraud penalty and a penalty for failure to pay a tax levied pursuant to section 6651. Treas.Reg. § 301.6653–1(b) does not reflect these amendments at the present time.

14. When Acker was assessed with delinquency penalties the government was aware of his past tax compliance record and the circumstances surrounding his tax deficiencies for 1958 and 1960, including his 1968 criminal conviction. In light of this prior knowledge and the clear language of I.R.C. § 6653(d) it is uncertain why the government did not assess the fraud penalty in the first instance. In any event, I.R.C. § 6653(d) was designed, on its face, to prevent the pyramiding of penalties at issue in the instant case.

15. This method was employed in *Wood v. Commissioner*, 30 T.C.M. 525 (1971).

16. 28 U.S.C. § 2411(a) authorizes the payment of interest on judgment rendered for any overpayments in respect of any internal revenue tax:

In any judgment of any court rendered (whether against the United States, a collector or deputy collector of internal revenue, a former collector or deputy collector, or the personal representative in case of death) for any overpayment in respect of any internal revenue tax, interest shall be allowed at an annual rate established under section 6621 of the Internal Revenue Code of 1954 upon the amount of the overpayment, from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, such date to be determined by the Commissioner of Internal Revenue. The Commissioner is authorized to tender by check payment of any such judgment, with interest as herein provided, at any time after such judgment becomes final, whether or not a claim for such payment has

Accordingly, the government's motion for summary judgment is granted and Acker's motion for summary judgment is denied.

IT IS SO ORDERED.

been duly filed, and such tender shall stop the running of interest, whether or not such refund check is accepted by the judgment creditor.

28 U.S.C. § 2411(a).

The rate of interest is computed pursuant to I.R.C. § 6621, which provides as follows:

### Determination of rate of interest

(a) **In general.**—The annual rate established under this section shall be such adjusted rate as is established by the Secretary under subsection (b).

(b) **Adjustment of interest rate.**—The Secretary shall establish an adjusted rate of interest for the purpose of subsection (a) not later than October 15 of any year if the adjusted prime rate charged by banks during September of that year, rounded to the nearest full percent, is at least a full percentage point more or less than the interest rate which is then in effect. Any such adjusted rate of interest shall be equal to the adjusted prime rate charged by banks, rounded to the nearest full percent, and shall become effective on February 1 of the immediately succeeding year. An adjustment provided for under this subsection may not be made prior to the expiration of 23 months following the date of any preceding adjustment under this subsection which changes the rate of interest.

(c) **Definition of prime rate.**—For purposes of subsection (b), the term "adjusted prime rate charged by banks" means 90 percent of the average predominant prime rate quoted by commercial banks to large businesses, as determined by the Board of Governors of the Federal Reserve System.