**ROBINSON'S DAIRY, INC., Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 6802.

United States Court of Appeals Tenth Circuit.

March 27, 1962.

Edward I. Haligman, Denver, Colo. (Lawrence A. Atler, Denver, Colo., with him on the brief), for petitioner.

Douglas A. Kahn, Atty., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and Harry Marselli, Attys., Dept. of Justice, Washington, D. C., with him on the brief), for respondent.

Before PICKETT, LEWIS and HILL, Circuit Judges.

PICKETT, Circuit Judge.

This is a petition to review a Tax Court decision holding that the petition-

er was not entitled to the benefits of an amendment to the Excess Profits Tax Act of 1950 [1] relating to new corporations, and upholding the assessment of penalties under both § 291(a) and § 293(a), 26 U.S.C.A. §§ 291(a), 293(a) [2] for failure to file timely tax returns for the years in question, which was found to be due to negligence. With respect to the applicability of § 430(e), granting relief to new businesses, the taxpayer contends that it has met, in substance, the requirements of the statute, and that its excess profits taxes should have been computed at the rates authorized by that section. It is further contended that the evidence shows that the delay in filing the tax returns was due to reasonable cause and not to negligence or intentional disregard of the rules and regulations of the Treasury Department.

The Supreme Dairy Company was incorporated in Colorado in 1930, and thereafter it conducted a general dairy business. On July 14, 1947, its stockholders accepted an offer from a group of individuals to purchase all of the outstanding stock of the corporation. The agreement anticipated the dissolution of Supreme Dairy Company and the creation of a new corporation to take over the business. With two exceptions, the stockholders agreed not to enter into a competing business for a period of five years.[3] All of the stockholders in the old company were required to cooperate so that the purchasers could retain the good will of the company, and it was also provided in the agreement:

"8. Any and all contracts involving membership in associations, leases of trucks; leases of any sort, neon signs, dairy cabinets, etc., which require the consent of a third person before the same can be transferred to the new corporation, shall be transferred to the new corporation and the consent thereto shall be procured by you. In connection with the foregoing you are to furnish to the undersigned a complete list of all contracts for neon signs, trucks, cabinets, and other contracts that may be involved in the foregoing."

Further, the purchasers were to receive complete information as to customers, routes for the delivery of products, prices of dairy products sold, and names of suppliers to the old company. This stock purchase transaction was consummated on July 15, 1947, and the old company was liquidated and dissolved.

On July 16, 1947, the purchasers incorporated Supreme Dairy, Inc. All of the assets of the old company were then transferred to the new corporation, and its stock was issued to the purchasers of the stock of the old company. Although the business was continued without interruption, the new owners, within a short time, did make substantial changes in the operation of the company's business and in its merchandising technique. However, the new corporation continued to employ the same route men for delivery of its products, used the same equipment and facilities, served the same customers, and purchased from the same suppliers. In answer to a question on its tax return for the fiscal year ending June 30, 1948, the taxpayer stated that it was not a new corporation, but was a "successor to [a] previously existing business."

The taxpayer filed "tentative returns" for the taxable years ending June 30, 1951, 1952, 1953 and 1954. These returns did not list any items of income or deductions or any information from which the tax due could be computed. They stated only the estimated tax liability based upon estimated profits. The

1. Internal Revenue Code of 1939, § 430 et seq., added by Ch. 1199, 64 Stat. 1137 (1950), as amended, 26 U.S.C.A. Excess Profits Taxes, § 430 et seq.

2. Section references are to the Internal Revenue Code of 1939 unless otherwise indicated.

3. The limitation on competition was two years for one stockholder, and there were different limitations in the agreement not to compete for another stockholder.

taxpayer was granted an extension of time to file a return for each taxable year, but did not file such returns within the extended times. Completed tax returns for these years were not filed until April 1, 1955. The taxpayer's accountant and auditor, who was also a stockholder and director of the new corporation, was responsible for the filing of the returns. During the years in question the accountant had a physical disability which required considerable hospitalization. He was, however, able to earn from $8,000 to $12,000 a year doing accounting work. The officers and directors of the new corporation knew of the delays, and they were discussed at a number of directors' meetings during the period. The Tax Court found that "a part of the deficiency for each year was due to negligence, or intentional disregard of rules and regulations."

Applying the statute to these facts as found by the Tax Court, we agree that the taxpayer was not a "new corporation" under § 430(e).[4] The Congressional intent in enacting § 430(e) was "to give assurance to new corporations in their initial period of development that the excess profits tax will not work undue hardship upon them." S.Rep. No. 781, 82d Cong. 1st Sess. 72 (1951), U.S.Code Cong. and Adm.Service 1951, p.

2045. On the basis of the facts in this case, it does not appear that the taxpayer was in its initial period of development. Admittedly it did solicit accounts different from those of the old company, and did add new business. This, however, was a merchandising expansion that the old company or any other existing dairy business could have made, and does not exemplify the context of the words "initial period of development," nor does it serve to draw the taxpayer within the area of protection that Congress intended to create in the 1951 amendment.

The taxpayer urges the court to look through the form of the transaction to its substance, and hold that since its shareholders' only intent was to acquire the assets of Supreme Dairy Company, they should not be considered stockholders of Supreme Dairy Company for the purpose of applying § 430(e) (2) (B) (i).[5] Looking to the substance of this transaction, it is nothing more than one where a group of individuals desired to get into the dairy business and purchased all the outstanding stock of a going dairy business. After acquiring the stock the new owners were at liberty to continue the old corporation or to transfer the business assets to another. They elected to reincorporate, make a very minor change in the corporate name, and convey the as-

4. Section 430(e) will not be reproduced here, but it provided that a taxpayer qualifying as a new business under the statutory provisions was entitled to the relief from excess taxes provided for therein for a period of not to exceed five years.

In Phinney v. Tuboscope Co., 5 Cir., 268 F.2d 233, Judge Brown accepted the statement of others that this statute "probably represented the most intricate and baffling enactment ever to receive Congressional approval." The difficulty in applying the statute is illustrated in that case by this statement:

"As we struggle through this intricate web of definitions, exclusions, provisions, exceptions, cross references, limitations, provisos and a general but unavoidable obscurity, it is our conclusion that § 430(e) (2) (B) (i), expressly incorporating § 445(g) (2) (B), impliedly carries with it § 445(g) (3), though not necessarily that portion of § 461 impliedly incorporated by the reference to §

462(g) in § 445(g) (1), so that the attribution rules of § 503(a) (1) (2) (5) makes ownership of the corporate stock by the minor beneficiaries of a trust the ownership of the father, and thus pushes the stock ownership beyond the critical 50 per cent to make thereby a new corporation an old one." (Footnote omitted)

5. Section 430(e) (2) (B) (i), with its reference to § 445(g) (2) (A), (B), or (C), provides that the benefits of the 1951 amendment are not allowable if the taxpayer acquired a substantial part of its assets from another corporation, or a substantial part of the properties of another corporation, if 50 percent or more in value or voting rights of the outstanding stock of taxpayer is directly or indirectly owned at the time of the transfer by individuals owning 50 percent or more in value of outstanding stock or voting stock of the other corporation at the time of the transfer.

sets of the old corporation to the new one.[6] The new corporation had no assets other than those formerly belonging to the old corporation. This situation was one which Congress intended to exclude from the benefits of the 1951 amendment.

■■ With respect to the asserted penalties for failure to file its returns, and for deficiencies due to negligence, the taxpayer introduced evidence tending to show that it furnished to its registered public accountant all the information needed to file its returns; that he was a competent accountant; that it relied upon him completely to prepare and file its tax returns; and that because of illness, the accountant was unable to prepare and file the returns. It asserts that since this constitutes reasonable cause for failure to file its returns, the delinquency and negligence penalties were improperly imposed, relying upon Peter Seletos, 15 C.C.H.Tax Ct.Mem. 1468; Parsch Realty Co., 13 C.C.H.Tax Ct.Mem. 845; Reliance Factoring Corp., 15 T.C. 604; and Watkins Patents, Inc., 9 C.C.H. Tax Ct.Mem. 1106. There is no question that the accountant was furnished with all the information needed to file the returns; the reasonableness of the taxpayer's reliance upon him is the issue here. With other ailments, he suffered a condition which was later diagnosed as a brain tumor. Although he was able to and did do work for other clients, the rest of the officers and directors knew that the taxpayer's returns were not being filed; knew that other accountants were available to do the work; and knew of the repeated attacks to which the accountant was subject. They assert, however, that it was difficult to relieve him from his duties because of his close relationship to several of the directors through marriage, and because he was also a stockholder and a director. The Tax Court found as a fact that a reasonable cause for failure to file did not exist with respect to any of the tax years in-

volved, and we agree. The actions of those in charge of the corporate affairs fell far short of the ordinary business care and prudence which this court adopted as the standard for reasonable cause in Sanders v. Commissioner, 10 Cir., 225 F.2d 629, cert. denied 350 U.S. 967, 76 S.Ct. 435, 100 L.Ed. 839. The penalty provided in § 291(a) is mandatory unless it is shown that the failure to file was due to reasonable cause, and not willful neglect, and the burden of establishing the reasonable cause for failure to file is on the taxpayer. Sanders v. Commissioner, supra. It is quite clear that the taxpayer failed to sustain its burden of proof in this regard.

■ The taxpayer endeavors to salvage something from the situation by asserting that in any event the imposition of penalties under both § 291(a) and § 293(a) is improper. In Vahram Chimchirian, 42 B.T.A. 1430, the Board of Tax Appeals upheld the imposition of both penalties, and its decision was affirmed per curiam by the Court of Appeals for the District of Columbia. Chimchirian v. Commissioner, D.C.Cir., 125 F.2d 746. In the instant case the Tax Court also found that a part of the deficiency in each year was due to negligence or intentional disregard of rules and regulations. The evidence set forth above supports this finding, and it is not clearly erroneous. Therefore, the imposition of the penalties under § 293(a) in addition to those under § 291(a) was proper. A deficiency, against which the penalty under § 293(a) can be assessed if the taxpayer was negligent, can arise out of the failure to file a return, and, if a taxpayer is negligent in failing to file his return, the fact that a penalty is also incurred under § 291(a) should not excuse him from the penalty for negligence under § 293(a). In other words, a negligent taxpayer should not be rewarded if his negligence culminates in a failure to file a return rather than in a failure to properly compute his tax.

Affirmed.

6. For reasons not important here, the name of the new corporation was changed to Robinson's Dairy, Inc. within a few months after its incorporation.