Joseph Bozied and Mildred Bozied v. Commissioner.
Bozied v. Commissioner
Docket No. 2286-67.
United States Tax Court
T.C. Memo 1969-142; 1969 Tax Ct. Memo LEXIS 151; 28 T.C.M. (CCH) 740; T.C.M. (RIA) 69142; July 3, 1969, Filed Donald G. Tripp, Oxford, Mich., for the petitioners. Robert T. Hollohan, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined income tax deficiencies and additions to the tax as follows: *10
Additions to tax
Year
Deficiency
Sec.6651(a)
Sec. 6653(a)
Sec.6653(b)
1959
$ 2,186.89
$1,093.45
1960
7,619.02
3,809.51
1961
1,619.84
809.92
1962
18,745.70
9,372.85
1963
$496.99
$99.40
The issues presented for determination are: (1) Whether respondent erred in his computation of petitioners' income tax deficiencies by means of the bank deposit method. (2) Whether petitioners filed false and fraudulent income tax returns for the years 1959 through 1962 with the intent to evade tax, and whether any part of the underpayment of tax in those years was due to fraud so as to justify the imposition of the addition to tax for fraud. (3) Whether deficiencies in income taxes and additions to the tax for the years 1959 through 1962 are barred by the applicable statute of limitations. (4) Whether petitioners are liable *153 for additions to the tax for the year 1963 for late filing under section 6651(a) and for negligence under section 6653(a). [1]
Findings of Fact Some of the facts herein have been stipulated and are found accordingly. Petitioners Joseph Bozied and Mildred Bozied, husband and wife, resided in Utica, 741 Michigan, at the time the petition herein was filed. The petitioners filed joint income tax returns with the district director of internal revenue at Detroit, Michigan, for the calendar years 1959, 1960, 1961, 1962, and 1963. Since Mildred Bozied is a party to these proceedings solely because she filed joint income tax returns for the years 1959 through 1963, Joseph Bozied will hereafter be referred to as petitioner. Petitioner was the owner and operator of several business ventures during the years in issue. These included the following: Years owned and operated
Name
Type of business
1959, 1960
Seat Cover Mart
Auto seat cover reupholstering.
1960, 1961, 1962
Pontiac Auto and Truck Sales
Sale of used automobiles, trucks, and parts.
1962, 1963
Utica Truck Sales
Sale of used trucks and parts.
*154 Upon audit of petitioners' income tax returns for the years in issue, no records were made available to the revenue agent to verify the figures shown on petitioners' returns for 1959 and 1960, [2] and insufficient records were made available to verify the accuracy of the returns for 1961 and 1962, so that respondent resorted to a bank deposit analysis to reconstruct petitioners' income for those years. Petitioner, in his several businesses, and his wife maintained various bank accounts and deposited the following amounts therein during the years indicated: *10
Deposits
Accounts
1959
1960
1961
1962
Seat Cover Mart (check)
$113,719.61
$ 47,663.28
Seat Cover Mart (payroll)
7,695.95
Pontiac Auto (check)
62,588.86
$68,842.40
$ 7,324.00
Mildred Bozied (check)
4,342.96
5,340.65
3,770.00
Utica Truck Sales (check)
82,497.51
Total
$113,719.61
$122,291.05
$74,183.05
$93,591.51
On petitioners' 1960 income tax return, they reported gross receipts from *155 the operation of the Seat Cover Mart in the amount of $60,976.87. Since total bank deposits into the Seat Cover Mart account for that year amounted to only $47,663.28 the $13,313.59 difference represents undeposited cash receipts. The following items must be deducted from total deposits in computing taxable gross deposits: Year
Amount
Explanation
1960
$ 1,100.00
Transferred to Mildred Bozied's account from other accounts of petitioner.
7,030.45
Transferred to the Seat Cover Mart payroll account from the Seat Cover Mart account.
4,722.48
Borrowed by petitioner from the Community National Bank of Pontiac.
803.94
Transferred to Pontiac Auto and Truck Sales account upon closing of Seat Mart account.
9,600.00
Proceeds of sale of Seat Cover Mart to Morris Goldberg.
2,837.22
Receipts from operation of Seat Cover Mart in December 1960, which amount was already included in undeposited cash receipts.
1961
825.00
Transferred to Mildred Bozied's account from Pontiac Auto and Truck Sales account.
7,494.50
Borrowed by petitioner from Bank of the Commonwealth.
11,750.00
Borrowed by petitioner from Kathryn Lakos.
1962
800.00
Transferred to Mildred Bozied's account from other accounts of petitioner.
1,150.00
Borrowed by petitioner from the Community National Bank.
101.71
Transferred to Utica Truck Sales account upon closing Pontiac Auto and Truck Sales account.
*156 742 Petitioner incurred business expenses, including "cost of goods sold," in the following amounts for the years indicated: Year
Amount
1959
[1] $101,239.32
1960
[1] 79,056.84
1961
[2] 56,011.67
1962
54,384.12
Beginning inventory
$ 9,650.00
Expenses allowed in respondent's Ex. G
39,261.67
Check to Clark Transport
13,300.00
Check to Maier - Schedule G.M.C. 2,300.00
$64,511.67
Less: Ending inventory 8,500.00
Adjusted business expenses
$56,011.67
From January 1, 1959, to December 31, 1962, petitioner's wife was not gainfully employed. From January 1, 1959, to December 31, 1962, the petitioners did not receive any gifts, inheritances, legacies or devises. Petitioners reported net profits on their income tax returns in the following amounts for the years indicated: Year
Amount
1959
$3,549.47
1960
3,095.03
1961
3,495.35
1962
3,703.16
The following schedule sets forth petitioner's total deposits, taxable gross deposits, and adjustments to taxable gross deposits made in order *157 to determine additional taxable income: 1959
1960
1961
1962
Total deposits and undeposited cash
$113,719.61
$135,604.64
$74,183.05
$93,591.51
Less: nontaxable deposits
26,094.09
20,069.50
2,051.71
Taxable gross deposits
$113,719.61
$109,510.55
$54,113.55
$91,539.80
Less: allowable expenses including "cost of goods sold" 101,239.32
79,056.84
56,011.67
54,384.12
Net profit
$ 12,480.29
$ 30,453.71
[1,898.12)
$37,155.68
Net profit disclosed on return
3,549.47
3,095.03
3,495.35
$3,703.16
Additional taxable income
8,930.82
[1] 27,358.68
33,452.52
On or about September 12, 1962, petitioner submitted a signed profit and loss statement for the years 1960, 1961, and 1962 and a financial statement as of September 12, 1962, to the Metropolitan Savings and Loan Association for the purpose of obtaining a mortgage. These statements disclosed inter alia the following: Year
Total sales
Cost of salesand otherexpenses
Net profit
1960
$82,151.87
$69,173.01
$12,978.86
1961
83,165.92
68,905.07
14,260.85
[1] 1962
41,050.00
34,523.20
6,526.80
*158 In June 1960 petitioner sold the Seat Cover Mart business. Although the sale price was approximately $30,000, petitioner received only a $9,600 down payment before the purchaser defaulted in December 1960, with the result that the business was returned to petitioner. Shortly thereafter, in January 1961, petitioner again sold the Seat Cover Mart, this time for $8,000 to Paul Riemenschneider, which sale was not reflected on petitioners' 1961 income tax return. Petitioner first met with the revenue agent in late 1962 or early 1963. At this time, certain books and records of petitioner were turned over to the agent. In a later telephone conversation with the agent, petitioner specifically asked whether the fact of the current investigation would have any effect on his requirement to file a timely 1963 income tax return. Petitioner was advised that a timely return would still be required. Petitioner did not at this time request the return of any of the books and records. Subsequently, pursuant to the request of petitioner's representative, petitioner's books and records were returned to him on April 8, 1964. During early 1964, petitioner *159 was reminded by his accountant of the necessity of filing a 1963 income tax return, but petitioner said he did not have time yet to prepare the return. Petitioners' 1963 income tax return was filed April 13, 1966. Ultimate Finding Petitioners did not file a false and fraudulent income tax return with the intent to evade income tax for any of the years in issue. No part of the underpayments in any 743 of the years in issue was due to fraud of the petitioners. Opinion Deficiencies Due to the failure of petitioner to maintain adequate books and records, the respondent determined the deficiencies herein by use of the bank deposits method to establish understatements of income by petitioner for the years 1959 through 1962. Petitioner makes no claim to having adequate books and records for the years involved, but does challenge respondent's calculations in several respects. In so doing, petitioner must bear the burden of rebutting the presumption of correctness that attaches to the respondent's determination of a deficiency. Estate of William Kahr, 48 T.C. 929 (1967). Petitioner's initial objection is to the computation of allowable business expenses, including *160 cost of goods sold, for the year 1961. Petitioner, at trial, presented two checks aggregating $15,600, which he claimed were for the purchase of used trucks for his truck sale business. This amount had not been previously included in the respondent's calculations for 1961. On brief, respondent conceded the deductible nature of the $15,600, but asserted that $8,500 must be subtracted from purchases for the year to reflect closing inventory. While this is true, respondent mistakenly failed to include an opening inventory of $9,650 [3] which must be added to purchases for the year, so that when properly computed, respondent has understated petitioner's cost of goods sold by $16,750 for 1961. With this additional amount of expense, even under respondent's calculations, petitioner has no additional taxable income in 1961 to serve as the basis for the assertion of any deficiency for that year. Petitioner's *161 other objection is that respondent failed to exclude in excess of $17,000 from the total bank deposits for 1962 claimed by petitioner to have been the proceeds of loans made to him during that year. However, the record lends no support to petitioner's claim, the only evidence of these additional loans being petitioner's bald assertion of their existence. Under these circumstances, we are unable to conclude that petitioner has carried his burden of proof with respect to the alleged loans. We must therefore accept respondent's calculation of the deficiency for 1962. We therefore agree with respondent's calculations of the deficiencies in the years 1960 and 1962 and find that for the year 1961, respondent erred in his calculations and no deficiency exists. [4]
Additions to Tax for Fraud Respondent also asserts the imposition of additions to tax for fraud under section 6653(b) [5] for the years 1959 through 1962. [6] Respondent bears the burden *162 of proving fraud, which proof must be by clear and convincing evidence. M. Rea Gano, 19 B.T.A. 518 (1930); Carter v. Campbell, 264 F. 2d 930 (C.A. 5, 1959). Respondent's evidence must do more than merely raise the suspicion of fraud, it must establish its existence clearly and convincingly. Cleveland Thurston, 28 T.C. 350 (1957). We think respondent has failed to do this. Although petitioner's conduct with respect to the keeping of proper business records and the preparation of his income tax returns was clearly negligent, perhaps grossly so, such negligence is not the equivalent of fraud. Mitchell v. Commissioner, 118 F. 2d 308 (C.A. 5, 1941). Petitioner kept no secret bank accounts and engaged in no identifiable *163 pattern of deceptive business practices over the years involved. His negligent keeping of his business records did render the ascertainment of his proper tax liability almost impossible, but this alone does not establish the bad faith, the deliberate and calculated intention at the time the returns were filed to defraud the Government of taxes legally due that are the prerequisites of a finding of fraud 744 against petitioner. Mitchell v. Commissioner, supra. In sum, our review of the record as a whole convinces us that respondent has failed to establish by the required "clear and convincing" evidence that petitioner's conduct during the years in issue justified the imposition of the addition to tax for fraud. Statute of Limitations Since petitioners filed timely tax returns for the years 1959 through 1962, and the notice of deficiency was dated March 29, 1967, the 3-year statute of limitations provided in section 6501(a) [7] will bar the assertion of any deficiency herein unless one of the exceptions thereto is applicable. *164 Section 6501(c) (1) provides that in the case of a false or fraudulent return with the intent to evade tax, the tax may be assessed at any time. However, in light of our determination above in regard to the additions to tax for fraud, we hold that the exception provided in section 6501(c) (1) is not applicable herein. Respondent argues, however, that in any case the 6-year statute of limitations in section 6501(e) [8] applies to the years 1960, 1961, and 1962. We agree. The following chart illustrates the computation of section 6501(e) exception in this case: Year
Gross incomestated inreturn
Actual grossincome
Percentageunder- stated
1960
$82,151.87
$109,510.55
33
[1] 1961
16,273.75
54,113.55
222
1962
33,118.95
91,539.30
177
*165 Therefore, we hold that the 6-year statute of limitations applies to the years 1960, 1961, and 1962, and that respondent's notice of deficiency was timely for those years. Additions to Tax for 1963 Respondent further contends that petitioners are liable for the addition to tax for late filing provided in section 6651(a) [9] and the addition to tax for negligence provided in section 6653(a) [10] for the year 1963. The burden of proof in regard to both additions to tax lies with petitioner. Rudolf A. Zivnuska, 33 T.C. 226, 239 (1959) (failure to file); Carroll F. Schroeder, 40 T.C. 30 (1963) (negligence).
*166 Section 6651(a) provides that an addition to tax for failure to file a tax return will be imposed "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." Petitioner argues that the delay in filing his income tax return for 1963 was due to reasonable cause since his tax records were in the possession of the internal revenue agent and he could not prepare the return in time. However, there are certain flaws in petitioner's argument which lead us to reject it. First, there is no proof that the agent had any records pertaining to the year 1963. Second, all records which the agent did have were returned to petitioner by April 8, 1964. And third, despite the urging of his accountant to do so, petitioner did not file his 1963 income tax return until April 1966, 2 years after the return of his records. Under these circumstances, we hold that petitioner's late filing of his income tax return for 1963 was not due to reasonable cause and therefore the addition to tax is properly imposed. 745 Section 6653(a) provides for an addition to tax of 5 percent of the "underpayment" of tax where any part of such underpayment is due to negligence or intentional *167 disregard of the rules. The "underpayment" as defined in section 6653(c) [11] is the "deficiency" as defined in section 6211(a), [12] with the exception that only the tax shown on a timely filed return will be deducted from actual tax due for that year in computing the underpayment. Thus, in the present case, even though there is no deficiency for 1963, there may still be a 5 percent addition to tax for negligence since the income tax return for that year was not timely filed. *168 Respondent contends that petitioner's negligence consisted of his failure to keep adequate books and records so that his accountant was required to reconstruct the taxable income for 1963 before the income tax return could be filed. Since petitioner has presented no evidence that his conduct in this regard was not negligent, we must find for respondent on this issue. Therefore we hold that the addition to tax for negligence is properly imposed for 1963. Cf. Robinson's Dairy, Inc., 35 T.C. 601, 609 (1961), affd. 302 F. 2d 42 (C.A. 10, 1962). Decision will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954 unless stated otherwise.↩
2. Petitioner's accountant testified that the business records used to compute petitioners' income tax for 1959 and 1960 were returned on a monthly basis to petitioner.↩
1. Amount reported by petitioners on their income tax return filed for that year. ↩
2. Computed as follows:↩
1. Notice of deficiency stated additional income to be $27,231.26, which figure respondent concedes is binding on him herein.↩
1. Partial year to September 12, 1962.↩
3. Since respondent accepted $9,650 as the closing inventory of Pontiac Auto and Truck sales for 1960, we assume that he has no objection to that figure as properly reflecting the opening inventory for 1961, and his failure to include it in his computations was merely an oversight.↩
4. In regard to 1959, although we find no error in respondent's calculations therefor, we find, infra, page 11, that the assertion of any deficiency for that year is barred by the 3-year statute of limitations provided in section 6501(a).↩
5. SEC. 6653(1). Fraud. - If any part of any underpayment * * * of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * * ↩
6. Since we have determined previously that there was no deficiency in tax for 1961, there is no underpayment of tax as defined in section 6653(c) upon which to base an addition to tax for fraud for that year.↩
7. SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (a) General Rule. - Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.↩
8. SEC. 6501(e). Substantial Omission of Items. - Except as otherwise provided in subsection (c) - (1) Income Taxes. - In the case of any tax imposed by subtitle A - (A) General Rule. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed. * * *↩
1. Even though we find 1961 still open under the 6-year statute of limitations, we have previously determined that no deficiency exists for that year.↩
9. SEC. 6651. FAILURE TO FILE TAX RETURN. (a) Addition to the Tax. - In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof) * * * on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate. ↩
10. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes. - If any part of any underpayment (as defined in subsection (c) (1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.↩
11. SEC. 6653(c). Definition of Underpayment. - For purposes of this section, the term "underpayment" means - (1) Income, Estate, and Gift Taxes. - In the case of a tax to which section 6211 (relating to income, estate, and gift taxes) is applicable, a deficiency as defined in that section (except that, for this purpose, the tax shown on a return referred to in section 6211(a) (1) (A) shall be taken into account only if such return was filed on or before the last day prescribed for the filing of such return, determined with regard to any extension of time for such filing) * * * ↩
12. SEC. 6211. DEFINITION OF A DEFICIENCY. (a) In General. - For purposes of this title in the case of income, estate, and gift taxes, imposed by subtitles A and B, the term "deficiency" means the amount by which the tax imposed by subtitles A or B exceeds the excess of (1) the sum of (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus (B) the amounts previously assessed (or collected without assessment) as a deficiency, over - (2) the amount of rebates, as defined in subsection (b) (2), made.↩