GLENNON T. MORAN and DOLORES A. MORAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moran v. Commissioner
Docket No. 4438-77.
United States Tax Court
T.C. Memo 1981-352; 1981 Tax Ct. Memo LEXIS 396; 42 T.C.M. (CCH) 337; T.C.M. (RIA) 81352; July 6, 1981
Edward R. Joyce, for the petitioners. David T. Karzon, Jr., for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to the tax for the years 1972 and 1973: Addition to Tax
Addition to Tax
Year
Deficiency
Under Sec. 6651(a) [1]
Under Sec. 6653(a)
1972
$ 15,232.07
$ 3,808.02
$ 840.07
1973
9,439.98
0
472.00
*397 In an amended answer filed on April 17, 1979, respondent increased the above deficiencies and additions by the following amounts: Addition to Tax
Addition to Tax
Year
Deficiency
Under Sec. 6651(a)
Under Sec. 6653(a)
1972
$ 14,580.95
$ 3,645.24
$ 729.05
1973
495.00
0
24.75
After concessions, the only issue remaining for decision is whether any part of petitioners' underpayment of tax for each year 1972 and 1973 is due to negligence or intentional disregard of the rules and regulations under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. Petitioners Glennon T. Moran and Dolores A. Moran resided in St. Louis, Missouri, at the time they filed their petition in this case. Petitioners filed joint Federal income tax returns for the years 1972 and 1973 with the Internal Revenue Service Center at Kansas City, Missouri. Petitioner Dolores A. Moran is a party to this proceeding solely because she filed joint returns with her husband, and the term petitioner will hereinafter refer to Glennon T. Moran. *398 During all relevant times herein, petitioner was engaged in the practice of law and was also involved in a sole proprietorship known as Spring Valley Towing, a wholly owned corporation called Control Construction Co., Inc., another corporation known as American Restaurant School, and seven or eight real estate properties. Petitioner had practiced law since 1947 or 1948, specializing in personal injury cases. During 1972 and 1973, petitioner used a single checking account for both his real estate ventures and his law practice and also for certain personal expenditures. He normally deposited most receipts and paid most expenses relating to his law practice through the one checking account. On final settlement of a negligence case, petitioner normally deposited the gross receipts, including his client's portion of the recovery and his own fee, in this checking account. He did not maintain a segregated or separate trust account for his clients' funds. On occasion, if his clients were in a hurry to receive their money, petitioner did not deposit a recovery in his checking account. In those instances, petitioner wrote a cashier's check to himself and one to his client. In all other *399 cases where petitioner deposited the gross receipts in his account, he entered the amount of the settlement and the last name of the client or the case name on the deposit slip or the deposit slip stub in his checkbook. Except in the few instances where the entire settlement constituted petitioner's legal fee, neither these deposit slips (or stubs) nor the check stubs for that checking account showed how much of the settlement was the client's recovery as opposed to petitioner's fee. [2] Moreover, petitioner did not maintain any journals, ledger sheets, permanent books of account, or any other accounting books or records of original entry with respect to gross receipts from or expenses of his law practice during the years in question. [3]
*400 Petitioner omitted from the law practice income reported on his tax returns in 1972 and 1973 certain funds received from clients that he considered to be reimbursements of advances he had allegedly made to the clients in prior years. The only records that petitioner maintained of these alleged advances were cancelled checks and stubs (presumably from the prior years) showing the payee, the date of payment, and a notation of the case and client name. These records did not indicate whether or not petitioner had taken a deduction for the same expenses during the prior years. Petitioner allegedly kept paid bills, cancelled checks, and lists showing advanced expenses in his client case files. However, petitioner failed to present any case files to his 1972 return preparer, to his accountant representing him at the audit, to the revenue agent conducting the audit, or to the Court at the trial. Prior to the trial, he did not tell any of these individuals about the records of advances and client expenses allegedly contained in these client files. See Footnote 8 and pages 14-15 of the Opinion below. During the years in question, petitioner paid law practice expenses and personal *401 expenses from the same checking account in which he deposited his law practice receipts. Generally, the only records petitioner maintained of expenses were his cancelled checks and check stubs listing the payee, the category of the expense, and, in some cases, the personal or business purpose of the expense. The cancelled checks and check stubs showed certain payments to clients (client settlements), certain cases expenses paid by petitioner during the years here involved, and certain payments for office supplies and dues and subscriptions for those years. Those checks and stubs did not substantiate the dates, amounts, or business purpose of various expenditures allegedly made for promotion, entertainment and advertising, did not disclose the nature of certain payments made for Spring Valley Towing, and did not substantiate or permit an allocation of expenses between personal and business use of petitioner's home and office telephones and petitioner's personal automobile. Petitioner stored some checks, airline tickets, hotel bills, receipts and other documents in one large envelope. However, he did not record on these documents any notations as to entertainment, advertising or *402 business purpose, or any client or case name. During 1972, petitioner deducted certain payments made on behalf of Spring Valley Towing, a former corporation that had gone out of business, and that petitioner allegedly was winding down as a sole proprietorship. Those payments included: (1) amounts paid for Spring Valley Towing during prior years for towboat repairs that petitioner claimed had not been deducted in the earlier years and (2) checks to banks for repayment of both principal and interest no loans for which petitioner claimed that he remained personally liable as a guarantor on the corporate loans. However, the checks paid on behalf of Spring Valley Towing did not identify the payments attributable to repairs or to interest as opposed to principal on the loans. The payments for Spring Valley Towing, totalling $ 17,326.75, were deducted on petitioner's 1972 return as expenses of his law practice rather than as expenses of the corporation or the sole proprietorship. The cancelled checks and stubs for petitioner's home telephone, office telephone, and personal automobile did not indicate the percentages of such payments made for business as opposed to personal use. On *403 his 1972 and 1973 returns, petitioner merely estimated that 75 percent of his home telephone bill, 100 percent of his office telephone bill, and 75 percent of his personal automobile expenses were business related. Petitioner employed one secretary to work for his law office, his various business interests, and a small corporation that he owned called the American Restaurant School. All secretarial fees were paid by the American Restaurant School and were evidenced by cancelled checks and stubs and possibly by the corporation's quarterly payroll tax reports. However, those records did not show what portion of the secretary's billable hours were spent working for petitioner's law office, the corporation, or petitioner's other interests, or whether these same expenses had been deducted on the corporation's returns. Petitioner also had certain bank statements, insurance company records, cancelled checks, and check stubs reflecting various payments for interest, insurance, and taxes. However, those records did not identify the entity or business activity in connection with which the payments were made, and it was not possible to tie those payments to any of the deductions claimed *404 on petitioner's tax returns. Petitioner owned seven to eight parcels of real estate, and deducted expenses and rental losses on some of the properties in 1972 and 1973. Petitioner maintained for each property (1) check stubs and paid bills listing repair expenses, and (2) a ledger sheet listing the year the property was purchased and depreciation information. At one time he maintained a separate bank account for his real estate activities, but the record does not establish that there was such a separate checking account during the years involved in this case. Petitioner's records did not show, however, whether the expenses and rental losses he deducted in 1972 and 1973 were incurred in connection with those properties that he held for the production of income or held for profit. Petitioner's 1972 income tax return was prepared by an accountant and business acquaintance named Don Gravlin. Petitioner supplied Gravlin with the following records for that purpose: his checkbook and check stubs, a spread sheet of check numbers and categories of expenses prepared by petitioner himself, and a list of cases and fees received in those cases. Petitioner used similar records when he *405 prepared his own 1973 income tax return. Gravlin did not participate in the preparation of that return. After petitioner was notified that his 1972 and 1973 returns were being audited, he contacted William R. Foreman, a certified public accountant, to determine the adequacy of his records and to represent him during the audit. [4] For this purpose, petitioner and his wife, on May 10, 1975, executed a power of attorney appointing Foreman to represent them in connection with the audit. Petitioner gave the following records to Foreman: cancelled checks and stubs, deposit slip stubs, bank statements, corporate records of several corporations in which petitioner held interests, insurance company records, and the ledger sheets for the real estate properties. Petitioner never showed Foreman any journals, ledgers or other accounting books or records of original entry for gross receipts and expenses for his law practice, or any client or case files. Based on the records he received, Foreman was unable to determine the purpose of various payments deducted by petitioner. Moreover, Foreman never totaled the amounts of the checks and stubs to see whether they equalled the deductions claimed *406 on the returns. During the audit, which was conducted in Foreman's ooffice, Foreman and Revenue Agent Steven Grass went over the checks, check stubs, deposit slip stubs, bank statements, and insurance company records for 1972 and 1973. Based on his examination, Grass was unable to tie the income and expense figures in petitioner's records with the figures and items on his returns. Grass could reconcile only those receipts that represented just fees and had no related client expenses or client funds. Although Grass did determine that petitioner had received distributions from his wholly owned corporation, Control Construction Co., he had *407 a basis at that time for treating them as income. [5] With respect to expenses, Grass was unable to determine (1) what items were deducted on petitioner's returns and (2) the purposes of various payments by checks that were submitted in support of the returns. In the notice of deficiency, respondent made 13 adjustments to petitioner's gross income and expenses for each of the years in question, increasing the total amount of taxable income by $ 42,634.91 for 1972 and $ 28,648.15 *408 for 1973. By an amended answer filed April 17, 1979, respondent, apparently after an audit of the corporation, further determined that petitioner, as the sole shareholder of Control Construction Co., received and failed to report dividend income from the corporation. In 1972 petitioner received distributions from Control Construction Co. of $ 32,093, of which $ 7,585 was to be applied to reduce his basis in his stock and $ 24,508 was dividend income that petitioner failed to report on his tax return for that year. In 1973 petitioner received dividend income from Control Construction Co. in the amount of $ 1,200 and failed to report that amount on his tax return. Petitioner has conceded the correctness of all of the adjustments made in the statutory notice and his omissions of the dividend income from Control Construction Co. [6] Petitioner has also conceded that the late filing addition is applicable for 1972, thus leaving in dispute only the negligence additions for 1972 and 1973. *409 OPINION The only issue for decision is whether petitioner is liable for the negligence addition for the years 1972 and 1973. Section 6653(a) [7] provides for the imposition of a five percent addition when any part of any underpayment of tax is due to negligence or intentional disregard of the rules and regulations. There is no dispute as to the amounts of the underpayments of tax. Petitioner has the burden of proving that no part of the underpayment for each year was due to negligence or intentional disregard of rules and regulations. Vaira v. Commissioner, 444 F. 2d 770, 777 (3d Cir. 1971), affirming on this issue 52 T.C. 986, 1004 (1969); Estate of Mason v. Commissioner, 64 T.C. 651, 663 (1975), affd. by order 566 F. 2d 2 (6th Cir. 1977); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Petitioner has failed to meet his burden. *410 A taxpayer is required to maintain such permanent books of account or records as are sufficient to establish the amount of gross income and deductions required to be shown by him on his tax returns. Section 6001; sec. 1.6001-1(a), Income Tax Regs. A taxpayer is not negligent or in intentional disregard of the rules and regulations, if his books and records are sufficiently accurate to show his income and deductions and to enable respondent to make any necessary adjustments. However, where a taxpayer fails to keep such books or records or fails to give his books or records to his return preparer and to respondent's agents, the negligence addition applies. Robinson v. Commissioner, 51 T.C. 520, 542 (1968), affd. on this issue 422 F. 2d 873 (1970); Reaver v. Commissioner, 42 T.C. 72, 82-83 (1964). Petitioner either did not maintain sufficiently accurate books or records or at least never furnished them to his representatives, to respondent's agents, or to this Court. The record shows that petitioner failed to maintain adequate books or records for each of the years in question. Petitioner failed to keep any permanent books of account, *411 journals, ledgers, or any other books of original entry to accurately reflect his income and expenses or to enable respondent's agent to determine his correct income and expenses. The revenue agent was unable to reconcile the income and expense figures in petitioner's records with the figures and items on his tax returns. The only items the revenue agent was able to tie to the returns were legal fees received in small cases where there were no related case expenses or client funds to be deducted from the gross recovery. The revenue agent's inability to determine petitioner's income from legal fees was compounded by petitioner's failure to maintain a separate trust account for his client's funds. Petitioner also failed to include certain legal fees in income, claiming that such payments were reimbursements of advances made to clients during prior years. Although petitioner testified that he kept records of such advances, he never told his return preparer, his accountant, or respondent's agent about the existence of these records; nor did he ever produce any such records during the audit or at the trial of this case. On this record, the Court concludes that petitioner's records *412 did not establish that such advances had in fact been made or that if they had been made, that deductions therefor had not been taken for them during the prior years. Based on petitioner's records of expenses, the revenue agent was unable to determine what items had been deducted on petitioner's returns or to determine the purposes of various cancelled checks and check stubs submitted in support of the returns. The deficiencies in petitioner's records are set out in detail in the findings of fact and will not be repeated here. Petitioner's record keeping was singularly deficient, particularly for a lawyer of many years' experience in the practice of law and in various business enterprises. The revenue agent, testifying about his audits of other lawyers, voiced the opinion that petitioner's record keeping was "the worst I have ever seen for an attorney, the only one with no records or ledgers." The Court agrees that petitioner's records were wholly inadequate. In the record in this case, there is a tantalizing suggestion that petitioner really had the necessary documentation to support his tax returns, but that such documentation was in his client case files and that there *413 was some problem under the canons of ethics of the Missouri bar if he divulged these files without the permission of the clients. [8] Assuming there may have been some ethical problem with client case files as such, that would not explain why petitioner chose to keep his own tax records in his client case files; and the putative ethical problem should not extend to books or records of the type that every taxpayer, whether lawyer or layman, must maintain for his own tax returns. It is the conclusion of this Court that petitioner had not maintained any records that adequately reflected his income and deductions and therefore had none to furnish. Petitioner understated his income for 1972 *414 by 1,214 percent and for 1973 by 338 percent. The statutory notice of deficiency and amended answer in this case show numerous adjustments to income and expenses each year, resulting in discrepancies between taxable income, as determined by respondent and as reported by petitioner, of $ 67,142.91 for 1972 and $ 29,848.15 for 1973. Such large discrepancies and numerous adjustments to taxable income are strong evidence of negligence. Switzer v. Commissioner, 20 T.C. 759, 766 (1953). Moreover, e note that with respect to 1972, petitioner did not file a timely return. Such failure to exercise due care in timely filing a return constitutes further support for the imposition of the negligence addition. Robinson's Dairy, Inc. v. Commissioner, 35 T.C. 601, 608-609 (1961), affd. 302 F. 2d 42, 45 (10th Cir. 1962). Petitioner has failed to sustain his burden of proof. We conclude that the underpayments of tax were due to negligence or intentional disregard of rules and regulations. Accordingly, we sustain respondent's imposition of the negligence addition for 1972 and 1973. Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years here involved.↩
2. There is a conflict in the testimony on this point. Petitioner testified that this information was contained on the stubs. The revenue agent who conducted the audit checked both the check stubs and the deposit stubs for this account and testified that neither contained the information. The Court found the revenue agent's testimony more credible. ↩
3. Any intimation by petitioner or the accountant who represented him during the audit that such records may have existed at one time and may have been lost during the audit is wholly unfounded. See Footnotes 4 and 5 below.↩
4. At the trial Foreman testified on direct examination that he found petitioner's records adequate. That conclusory testimony was wholly lacking in any substantiating detail or underlying facts. His conclusion was thoroughly discredited on cross examination. Based on the record as a whole in this case, the Court found more persuasive the revenue agent's evaluation that of the 10 to 12 other lawyers whom he had audited petitioner's record keeping "was the worst I have ever seen for an attorney, the only one with no records or ledgers."↩
5. Between April 15 and May 30, 1976, about a year after the audit began, Foreman moved petitioner's records to another building while he remodeled his offices. Sometime during that period, Foreman may have lost certain records of Control Construction Co. However, Foreman never told Grass that he had lost any of petitioner's records (corporate or otherwise) for 1972 and 1973. Any ledgers or large black books that were ever in Foreman's possession were corporate books. The record clearly establishes that petitioner never maintained any journals, ledgers, permanent books of account, or any other accounting books or records of original entry for his law practice or other noncorporate business ventures.↩
6. Due to petitioner's repeated failures to comply with the Court's order to respond to respondent's request or production of documents and to answer respondent's interrogatories and failure to respond to the Court's order to show cause, this Court, by order dated August 13, 1980, imposed sanctions under Rule 104(c), Tax Court Rules of Practice and Procedure↩, precluding petitioner from introducing any evidence regarding respondent's adjustments to income in the statutory notice and in the amended answer. At the trial of the case on November 17, 1980, petitioner did not seek to be relieved of the sanctions imposed by the Court's order of August 13, 1980, although the Court made inquiry about the matter. Moreover, no basis for relieving petitioner of the sanctions has been suggested and none can be found in the record of this case. In any event, petitioner at the trial stipulated to the correctness of the adjustments in the statutory notice and the matters raised in respondent's amended answer. Petitioner also failed to file a post-trial brief, although the Court granted his motion for an extension of time within which to do so.
7. SEC. 6653. FAILURE TO PAY TAX. (a) Negligence or Intentional Disregard of Rules and Regulations With Respect to Income or Gift Taxes↩.--If any part of any underpayment (as defined in subsection (c)(1)) of any tax imposed by subtitle A or by chapter 12 of subtitle B (relating to income taxes and gift taxes) is due to negligence or intentional disregard of rules and regulations (but without intent to defraud), there shall be added to the tax an amount equal to 5 percent of the underpayment.
8. Petitioner suggested as much in response to a leading question by his counsel. However, just before that occurred, petitioner, in response to the Court's questioning, had insisted that his case files were available to his 1972 return preparer, stating that if the return preparer had asked for them he "could have certainly have had them." The record clearly establishes that the case files were never furnished to the return preparer, petitioner's accountant, the revenue agent, or the Court.↩