ROBERT L. HERD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; BETTY R. HERD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Herd v. Commissioner
Docket Nos. 4270-92, 4271-92
United States Tax Court
T.C. Memo 1994-580; 1994 Tax Ct. Memo LEXIS 588; 68 T.C.M. (CCH) 1261; November 28, 1994, Filed *588 Order and decisions will be entered for respondent as to the deficiencies and the additions to tax under secs. 6651, 6653(a), and 6654, and for petitioners as to the additions to tax under sec. 6653(b). Robert L. Herd and Betty R. Herd, pro sese. For respondent: Edith F. Moates and David G. Hendricks. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by means of separate notices of deficiency, determined deficiencies in and additions to petitioners' Federal income tax as follows:[1]
Robert L. Herd
Additions to Tax
Sec. Sec.
Sec. Year
Deficiency
6653(b)
6653(b)(1)
6653(b)(1)(A)
1981
$ 12,700
$ 6,350
-- -- 1982
23,869
-- $ 11,935
-- 1983
9,186*
-- 4,593
-- 1984
7,910
-- 3,955
-- 1985
7,514
-- 3,757
-- 1986
8,206
-- -- $ 6,155
Betty R. Herd
Additions to Tax
Sec. Sec.
Sec. Year
Deficiency
6653(b)
6653(b)(1)
6653(b)(1)(A)
1981
$ 4,465
$ 2,233
-- -- 1982
13,765
-- $ 6,883
-- 1983
8,304
-- 4,152
-- 1984
7,763
-- 3,882
-- 1985
7,514
-- 3,757
-- 1986
8,206
-- -- $ 6,155
Robert L. Herd
Additions to Tax
Sec. Sec.
Sec. Year
6653(b)(1)(B)
6653(b)(2)
6654 1981
--
--
$   973
1982
--
[1]
2,324
1983
--
[1]
562
1984
--
[1]
498
1985
--
[1]
431
1986
[1]
--
397
Betty R. Herd
Additions to Tax
Sec. Sec.
Sec. Year
6653(b)(1)(B)
6653(b)(2)
6654 1981
--
--
$   343
1982
--
[1]
1,340
1983
--
[1]
507
1984
--
[1]
488
1985
--
[1]
431
1986
[1]
--
397
*589 All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. Respondent also asserted, in her answer filed with each case, that, if petitioners are not liable for the additions to tax for fraud under section 6653(b), then they are liable, for all of the years in issue, for the addition to tax under section 6651 for failure to timely file a return and for the additions to tax under section 6653(a) for negligence or intentional disregard of rules and regulations. Petitioners failed to appear for trial, and respondent moved to dismiss for lack of prosecution. Respondent's motion was granted as to the underlying deficiencies and the additions to tax for underpayment of estimated tax under section 6654, for which petitioners have the burden of proof. [2] Rules 53, 123, 142(a). The remaining issues for decision are whether petitioners are liable for the additions to tax for fraud under section 6653(b), or, in the alternative, whether petitioners are liable for the additions to tax under section 6651 and/or section 6653(a). In attempting to meet her *590 burden as to the remaining issues, respondent, in petitioners' absence, presented documentary evidence and testimony at the trial of this case. Sec. 7454(a); Rule 142(a) and (b). FINDINGS OF FACT Petitioners resided in Poteau, Oklahoma, at the time they filed their petitions. During the years 1978 through 1981, petitioners resided in Buena Vista, Colorado, where they owned and operated the Coronado Motel (hereinafter, motel). At that time, Mr. Herd worked for Climax Molybdenum Co. of Climax, Colorado, and Mrs. Herd operated the 16-unit motel. The couple resided in the motel's three-bedroom office/residence. Mr. James A. Beatty (Mr. Beatty) first met petitioners in approximately October 1979, when Mr. Herd attended classes concerning real estate taught by Mr. Beatty. Subsequently, Mr. Herd attended a course taught by Mr. Beatty concerning investment in real *591 estate tax shelters. Mr. Herd then had discussions with Mr. Beatty, wherein Mr. Herd indicated that he had held the motel for too long, had claimed depreciation on most of it, and intended to sell it. Mr. Beatty subsequently entered into negotiations with the Herds to purchase the motel. Prior to purchasing and closing on the motel, Mr. Beatty was approached with tax-protest discussions and materials by petitioners, primarily by Mr. Herd. Mr. Beatty advised Mr. Herd that, as a State-licensed real estate instructor, he could not discuss tax-protest matters. On June 15, 1981, petitioners entered a preliminary agreement to sell the motel to Mr. Beatty for $ 300,000. Mr. Beatty was to pay petitioners $ 10,000 down and $ 55,000 at closing and enter into an installment contract to pay the balance of $ 235,000 over 15 years with interest at 12 percent. The final contract was entered into on June 23, 1981, and signed by all parties on August 5, 1981. The transaction was closed on September 1, 1981. After payment of the $ 18,463.43 closing costs, petitioners received net proceeds of $ 46,536.57 on September 2, 1981. Chaffee Title Abstract was designated as escrow agent to receive *592 the $ 235,000 balance plus interest in regular, monthly payments plus extra payments four times annually designed to coincide with the motel's peak business months in the summer. Disbursements were made to petitioners and John H. and Claryce J. Burt, lienholders, in accordance with a set payment schedule. Through their attorney, petitioners negotiated Mr. Beatty's payoff of the installment contract on April 17, 1986, under which petitioners received a lump-sum final payment of $ 77,000. Mr. Beatty made all required payments of principal and interest from January 1982 through the point of the lump-sum payoff in 1986. Between the time the Herds signed the preliminary and final contracts to sell the motel to Mr. Beatty, petitioners, on July 23, 1981, jointly purchased a residential lot in Chaffee County, Colorado (the Chaffee property), from John H. and Claryce J. Burt. Shortly after purchasing the Chaffee property, petitioners built a personal residence thereon. On April 6, 1982, petitioners purportedly sold the lot and residence to their son, William E. Herd, for $ 60,000, taking a 20-year note at 10-percent interest for the entire selling price. Sometime later that year, Mrs. *593 Herd purportedly reacquired the Chaffee property from her son for $ 85,000; again, the entire selling price was evidenced by a note. On September 3, 1982, petitioners jointly entered into a contract to sell the Chaffee property to Robert J. and Sharon A. Hughes for $ 85,000. The sale was concluded by Mrs. Herd singly on or about December 11, 1982. Petitioners extended credit of $ 35,000 to the Hugheses and received a 25-year note bearing 10-percent interest. In addition to the installment note, Mrs. Herd received a net proceeds check for $ 38,115.19 on December 13, 1982. The Hugheses made regular monthly payments of $ 318.04 to Mrs. Herd from January 1983 through July 1986. On August 1, 1986, Mrs. Herd received a check for the loan balance in the amount of $ 33,528.51. Petitioners filed joint tax returns for at least the years 1978, 1979, and 1980. For those years, petitioners reported adjusted gross income of $ 28,870, $ 41,722, and $ 39,474, respectively. For the years 1981, 1982, and 1983, however, Mr. Herd submitted various Forms 1040 as tax-protest "returns" with the word "object" written on most places where an amount was required. Each Form 1040 filed by Mr. Herd *594 included two attached pages wherein he raised Fifth Amendment objections and indicated his refusal to supply income information. All three Forms 1040 were signed by Mr. Herd and listed his filing status as married, filing separate. The Form 1040 for 1981 reflected $ 1,747.50 in interest income. No other items or amounts of income were reported on the Forms 1040 filed by Mr. Herd for 1981 through 1983. Attached to the Form 1040 for 1982 was a Form 1099-NEC from Century 21 Summit Realty, Inc., indicating that payments were made to Mr. Herd in the total amount of $ 12,555.11 during 1982. This amount was not reported as income on the Form 1040 submitted for 1982. The initial Form 1040 submitted for 1982 reflected the word "none" for interest income. Mr. Herd later filed a "Corrected and amended" Form 1040 for 1982 reflecting only that the word "none" had been changed to "object" on the line designated for interest income. No Form 1099-NEC was attached to the 1983 return, though Century 21 Summit Reality, Inc., issued such a form to Mr. Herd in the amount of $ 1,222. Petitioners earned substantial capital gains on the sale of the motel and the Chaffee property; such gains, as *595 well as interest from the installment notes, should have been recognized and reported as income upon receipt of payments under the notes. Petitioners' capital gains, interest, depreciation recapture, nonemployee compensation (as reported on Forms 1099-NEC), and other income was sufficient to require them to file a tax return for each year in issue. Mr. Herd, however, filed protest documents for the years 1981, 1982, and 1983. By a letter dated November 4, 1982, the Ogden Service Center of the Internal Revenue Service (IRS) indicated to Mr. Herd that the form submitted for 1981 was not an acceptable return under law and advised him of his legal filing requirements. Mr. Herd responded by sending the IRS a January 7, 1983, letter reiterating his tax protester arguments and Fifth Amendment objections; attached to this letter were several pages of case citations, excerpts, and other materials purporting to support his position. Also included with the letter was a new Form 1040 for 1981 and a Form 1099-NEC. While the Form 1099-NEC indicated that Mr. Herd earned $ 2,700.15 in nonemployee compensation during 1981, this amount was not included as income on the new Form 1040 submitted *596 for 1981. On October 26 and November 10, 1987, Mr. Herd corresponded with the IRS's District Counsel in Denver, Colorado, arguing that the IRS was required to prove jurisdiction over him and his property and declining to have a conference to discuss any other topic. On February 10, 1989, Mr. Herd was convicted of willful failure to file tax returns for the years 1982, 1983, and 1984, in violation of section 7203, and he was sentenced to 18 months in Federal prison. After Mr. Herd's incarceration, petitioners returned to the Poteau, Oklahoma, area, where they had relocated. Shortly after Mr. Herd's release from prison, the ongoing civil tax examination was transferred to the IRS office in Oklahoma City, Oklahoma, and, specifically, to Revenue Agent Glenn Glover. In response to correspondence requesting information from petitioners, Mr. Glover and the Oklahoma City office of the IRS received a continuous stream of correspondence containing tax-protest arguments. Separate notices of deficiency were issued to petitioners on December 10, 1991, wherein deficiencies were determined based on Forms 1099 and other documents obtained by the IRS regarding each petitioner's income for the *597 years 1981 through 1986. Thereafter, each petitioner sent an identical tax-protest packet to the District Director of the IRS in Oklahoma City in which each claimed not to be a "taxpayer" and acknowledged that tax returns were not submitted for the years in issue. Petitioners likewise filed identical petitions with this Court on February 27, 1992. In their petitions, Mr. and Mrs. Herd reiterated tax protester arguments that they have continually advanced over the years, including "that petitioner is not a person made liable by the tax code to file a return or pay a tax" and "that a forced debt is in violation of the peonage laws of the United States of America". OPINION We first consider whether petitioners are liable for the additions to tax for fraud under section 6653(b) for the years 1981 through 1986. Respondent bears the burden of proving, by clear and convincing evidence, that there was some underpayment in each year and that some part of the underpayment for each year was due to fraud. Sec. 7545(a); Rule 142(b). Respondent may meet that burden by showing that a taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise *598 prevent the collection of such taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is never presumed but must be established by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85 (1970). It may, however, be provided by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). While a taxpayer's failure to file a tax *599 return may be an indication of fraud, it does not, standing alone, establish fraud. Kotmair v. Commissioner, 86 T.C. 1253, 1260-1261 (1986), and cases cited therein. When, however, the failure to file is coupled with other badges or circumstances that establish an intent to conceal or mislead, an inference of fraud may be justified. Id.; see also Holland v. United States, 348 U.S. 121, 137 (1954). In Kotmair, the taxpayer filed protester type returns similar to those filed by petitioner here; however, no evidence of falsification, concealment, or deception, or other facts which would support a finding of fraudulent intent, was found. We stated in Kotmair that the taxpayer's protest arguments "may have been meritless, frivolous, wrongheaded, and even stupid, but we cannot hold that they amounted to fraud, without something more. Were we to do so, every failure-to-file protester case would be automatically converted into a fraud case." Kotmair v. Commissioner, supra at 1262. In Zell v. Commissioner, 763 F.2d 1139 (10th Cir. 1985), affg. T.C. Memo. 1984-152, *600 the Court of Appeals for the Tenth Circuit, to which this case is appealable, held that disclosed defiance of laws requiring the filing of income tax returns does not establish fraud. Id. at 1144-1145. While acknowledging a split in the circuits, the Court of Appeals stated: a taxpayer is not liable for the civil fraud penalties unless he commits some affirmative act of concealment or misrepresentation. Mere failure to file, whether disclosed or not, does not justify the fraud penalties even when the taxpayer knows taxes are due. [Id. at 1146.]
In Zell, the court found sufficient affirmative acts of concealment in the taxpayer's filing of false Forms W-4 and continued: In addition, * * * [the taxpayer] in this case did not cooperate with the IRS agents during the investigation. To the extent that this factor has been considered in a number of cases in finding an intent to defraud, it counts against the taxpayer in this case. * * * The lack of cooperation, combined with the failure to file and the false withholding statements, indicates an intent to deceive the government and to impede the collection *601 of his taxes. [Id.; citations omitted.]
In the instant case, numerous tax protester arguments were advanced in Mr. Herd's Forms 1040 filed for the years 1981 through 1983, the attachments thereto, and in various other correspondence with the IRS. Petitioners responded to respondent's inquiries, but did not provide records or other information sufficient to enable a proper and expedient determination of their tax liability to be made. Petitioners continued to protest even after Mr. Herd's conviction and incarceration for criminal failure to file tax returns, but respondent has not shown, by clear and convincing evidence, falsification of records, concealment, deception, or other corroborating evidence of fraudulent intent. [3] Therefore, we conclude that respondent must fail on the fraud issue in this case. The additions to tax under section 6653(b) are accordingly not approved. *602 Our disposition of the fraud issue in favor of petitioners now requires us to consider the propriety of respondent's alternative position that additions to tax under sections 6651 and 6653(a) should be imposed in this case. [4]Since these additions were first asserted in respondent's answers, she bears the burden of proving petitioners' liability for them by a preponderance of the evidence. Rule 142(a). *603 Negligence, within the meaning of section 6653(a), has been defined as the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Taxpayers have a statutory duty to timely file their income tax returns, sec. 6702(a), and the breach of this duty is prima facie evidence of negligence, Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). As noted above, the Forms 1040 filed by Mr. Herd for the years 1981 through 1983 were protester type returns and contained little or no information from which petitioners' income and tax liability could be determined. Such forms are clearly not income tax returns within the requirements of the Internal Revenue Code. Edwards v. Commissioner, 680 F.2d 1268 (9th Cir. 1982); United States v. Daly, 481 F.2d 28 (8th Cir. 1973); United States v. Porth, 426 F.2d 519 (10th Cir. 1970). Petitioners admit in their petitions filed in this case that "No document *604 qualifying as a tax return was filed with any Office of the Internal Revenue for the periods in dispute." Additionally, petitioners failed to appear at trial and otherwise failed to proffer evidence tending to rebut respondent's prima facie case of negligence. Therefore, we find that petitioners are liable for the section 6653(a) additions to tax for negligence for the years 1981 through 1986. Since the Forms 1040 filed by Mr. Herd were not valid tax returns, and since petitioners admit that they did not file valid returns and have offered no proof that their failure to file was due to reasonable cause, they are also liable for the addition to tax under section 6651 for failure to file a tax return for each of the years in issue. Orders and decisions will be entered for respondent as to the deficiencies and the additions to tax under secs. 6651, 6653(a), and 6654, and for petitioners as to the additions to tax under sec. 6653(b).
Footnotes
1. These cases are consolidated for purposes of trial, briefing, and opinion↩
*. By official Tax Court Order dated December 2, 1994, and signed by Judge Joel Gerber↩, the above table was amended to read as indicated. 1. 50 percent of the interest due on the underpayment.↩
2. We also note that petitioners' prayer for reasonable litigation costs, as requested in their respective petitions, was and remains premature. Rule 231.↩
3. Although there is no evidence in the record that any payments were made pursuant to either note between petitioners and their son with respect to the purported intrafamily transfers of the Chaffee property, we are unable to conclude, as respondent argues, that the purpose of the purported transfers was to conceal petitioners' ownership and, thereby, avoid the payment/collection of Federal income taxes.↩
4. Had we found in favor of respondent on the fraud issue, respondent's alternative position with respect to secs. 6651 and 6653(a) would have been foreclosed. Sec. 6653(b), (d). Furthermore, merely because Congress provided a specific addition under sec. 6651 for failure to file a return, the Commissioner is not precluded from also imposing the sec. 6653(a) additions to tax for negligence when they are induced by the same act of failing to file a timely return. Robinson's Dairy, Inc. v. Commissioner, 35 T.C. 601, 608-609 (1961), affd. 302 F.2d 42↩ (10th Cir. 1962).